# Bales v. Covington et al.

March 24, 1950.

Ray C. Lewis, Judge.

Clyde R. Levi and William B. Arthur for appellant.

Murray L. Brown, Robert B. Bird and London, Brown & Bird **for** appellees.

JUDGE REES—Affirming.

On June 12, 1947, Delbert C. Covington was struck by a bolt of lightning and killed while in the performance of his duties as an employee of Ronald Bales. Both the employer and employee had accepted the provisions of the Workmen's Compensation Act. KRS 342.001 et seq. In due time the widow of Covington, on behalf of herself and four infant children, filed an application for compensation with the Workmen's Compensation Board. The employer denied liability on the ground that the injury which resulted in Covington's death, though arising in the course of his employment, did not arise out of his employment. The Board found that the accident arose out of the employment, and awarded compensation

based on the deceased's earnings of $22 a week. The employer petitioned the Laurel Circuit Court for a review, and that court affirmed the award of the Board. There is no dispute as to the facts, and the sole question presented by this appeal is whether Covington's death resulted from an injury by accident arising out of his employment.

Ronald Bales, the employer, was engaged in the logging business, and was operating a sawmill on a government reservation in Laurel County. The sawmill was located on top of a ridge described by some of the witnesses as 2,000 feet above the surrounding territory and three-fourths of a mile from the sawmill, also on top of the ridge, was a barn or stable, referred to as a lean-to structure, which was used to house four horses owned by him and used in the logging business. This barn was a temporary building, and had been erected by appellant out of green slabs and other waste lumber. It was 32 feet long, contained four stalls, was about 8½ feet in height at the front, and sloped to a height of 6 feet in the rear. It had a metal roof, and the roof had been nailed to an oak tree which had been topped and used as a corner post. Eight feet from this corner post was a poplar tree. The bolt of lightning which killed Covington struck the poplar, apparently followed the interlacing roots of the two trees, then up the corner post to the roof and along the roof to a point over the spot where Covington was standing. Both the poplar tree and the corner post were shattered, and the ground between was torn up. On the day Covington was killed he and a fellow employee, Henry Martin, were engaged in logging near the base of the ridge, a considerable distance from the barn. Each had a team of horses. They had been directed to quit at 3 p. m. when working at that location, to take their horses to the barn and unharness and feed them, and to return to the mill before quitting time, which was 4 p. m. Covington and Martin left the base of the ridge with their teams at 3 p. m., but before they reached the barn a thunder storm developed and rain began falling. Martin reached the barn first and had unharnessed his horses when Covington arrived. Martin went in one of the stalls and was assisting Covington to unharness his horses when the bolt of lightning struck. Martin testified:

"I had unfastened the hame strings on this horse and had the hames back on him standing there with the collar in my hand at the time he (Covington) walked into the stall; we were all standing there in the stall together, when it came that crack of lightning and that is all I knew for some few minutes, I don't know just how long; when I came to myself I got out of the stall, looked back into the stall and seen Covington and the horse was k'lled. I went back to the mill and reported the accident to Bales and the other workmen."

It is conceded that Covington's death occurred in the course of his employment, but appellant argues that his death did not result from an injury by accident arising out of h's employment. Many cases from this and other jurisdictions are cited, but appellant's chief reliance is on Fuqua v. Department of Highways, 292 Ky. 783, 168 S. W. 2d 39, while appellees rely chiefly on Stout v. Elkhorn Coal Company, 289 Ky. 736, 160 S. W. 2d 31. In the Fuqua case, Fuqua, with other members of a maintenance crew, was engaged in cutting weeds and brush on the right of way of a state highway. A thunder storm arose, and the foreman directed the men to seek shelter. Three men went to the porch of a nearby residence, two got in the cab of the Highway Department truck, and Fuqua and two others went into the garage near the residence. Fuqua sat down with his back to a plank leaning against the wall, and was killed when lightning struck the garage. His widow's claim for compensation was disallowed by the Workmen's Compensation Board on the ground that the cause of death had no relation to the employment. On appeal to this court the judgment of the circuit court approving the award of the Board was affirmed on the ground that there was no evidence that there was a greater likelihood of the deceased being struck in the garage than in the truck, on the porch of the house or on the road, and the case of Stout v. Elkhorn Coal Company, 289 Ky. 736, 160 S. W. 2d 31, 33, was distinguished. In the Stout case, Stout was working in a coal mine 112 feet under the ground when he was injured. The proof showed that a bolt of lightning struck a large oak tree on the surface above the point where Stout was working, and followed the roots of the tree to a crack in the ground which extended down to the roof of the room in the mine where Stout was working. There was evidence that the crack

in the ground served as a natural conduit for an electrical current. The Workmen's Compensation Board dismissed Stout's application for compensation on the ground that his injuries did not arise out of his employment. This court reversed the judgment affirming the award, and directed that compensation be awarded. The opinion adopted the majority rule in such cases which is that recovery of compensation by workmen injured by lightning is permitted "if the current of the stroke is aided or assisted in any manner to seek out and land upon the injured servant where he is directed to and is engaged in his work." After referring to a number of annotations on the subject in American Law Reports, the opinion said:

"It is acknowledged—not only by the writer of the annotations, but by some of the courts themselves—that there exists conflict in the opinions of the various courts upon the question as to whether or not an injury produced by an act of God ever becomes compensable under the workmen's compensation acts in any state of circumstances. But it will also be found that the great majority of the courts have reached the conclusion that the servant is entitled to compensation for injuries produced by lightning in all cases where he 'was subjected to a danger from lightning greater than were the other people in the neighborhood; that is, Was the danger to which he was subjected one which was incident to the employment, or was it one to which other people, the public generally, in that neighborhood, were subjected?'"

As said in Cardillo v. Liberty Mutual Insurance Company, 330 U. S. 469, 67 S. Ct. 801, 807, 91 L. Ed. 1028, "the statutory phrase 'arising out of and in the course of employment,' which appears in most workmen's compensation laws, is deceptively simple and litigiously prolific." In the earlier opinions a narrow construction was given the phrase "arising out of the employment," where the injury resulted from a so-called act of God, but in recent opinions the interpretation of the phrase has been broadened and the current trend is to give it a more liberal construction. Bauer's Case, 314 Mass. 4, 49 N. E. 2d 118; Caswell's Case, 305 Mass. 500, 26 N. E. 2d 328; Mixon v. Kalman, 133 N. J. L. 113, 42 A 2d 309; Musson v. Industrial Commission, 248 Wis. 192, 21 N. W. 2d 265; Aetna Life Insurance Company v.

Industrial Commission, 81 Colo. 233, 254 P. 995; Madura v. City of New York, 238 N. Y. 214, 144 N. E. 505. The facts in the present case bring it squarely within the rule announced in Stout v. Elkhorn Coal Company, supra, although the interpretation of the phrase "arising out of the employment" under that rule is not as broad as the interpretation by the courts of some other states. An electrical engineer introduced as an expert witness by the appellees testified that trees and other objects on a high ridge are more likely to be struck by lightning than similar objects at a lower elevation. An expert introduced by appellant conceded that this is true. The horses and the deceased's clothes were wet, and there was considerable metal in the barn, including the trace chains and other metal parts of the harness which the deceased was in the act of removing from the horse. The dirt floor of the barn was damp, and Covington's head was within a foot or two of the metal roof. The evidence was to the effect that all of these conditions combined exposed Covington to unusual danger from lightning. There can be no doubt that the poplar tree standing on a high ridge about 8 feet from the barn with its roots interlocking the roots of the tree used as a corner post, the metal roof on the barn, the proximity of Covington's head to the roof and the dampness, all tended to accentuate the danger from lightning. Obviously, the risk from which the death of Covington arose was one which, by reason of the nature of the employment, was greater than the risk to which the general public was exposed. By reason of his employment he was exposed to this hazard which was a natural incident to his work at that place.

Judgment is affirmed.