In the Matter of the Claim of LEO CAREY, an employee of the Schroeder Mining Company, made under Workmen's Compensation Law,

LEO CAREY,

*Employee, Claimant, and Appellant,*

vs.

SCHROEDER MINING COMPANY,

*Employer and Respondent.*

(No. 2683; May 24th, 1955; 283 Pac. (2d) 1005.)

38

For the appellant, the cause was submitted upon the brief of Jones and Jones of Wheatland, Wyoming, and oral argument by William R. Jones.

No appearance for respondent.

## OPINION

RINER, Chief Justice.

This is a case arising under the Workmen's Compensation Law of the State of Wyoming, W.C.S. 1945, § 72-101 et seq., and the facts thereof are substantially as follows: The claimant, Leo Carey of Guernsey, Wyoming, is a married man with a wife and four children as dependents. He was employed by the Schroeder Mining Company—processing ore east of Guernsey about one and a half miles. His employment was that of a truck driver, having been in their employ for about six months. He was struck by lightning while in the office of the company after he had made out his time card. Both the Employer's Report of Accident and Amended Employer's Report of Accident state that "Carey had turned in his time card at office and was leaning up against wall talking, it had started to rain hard and there was a heavy electrical storm. Apparently lightning struck the power line for there was a sheet of flame from light switch, this knocked Carey away, he did not fall, was conscious but numbed." The

attending physician's report stated that Carey had suffered a muscle strain; the physician's supplemental report filed thereafter showed that apparently the injuries sustained by the workman as a result of the lightning stroke were more extensive that originally estimated and a cervical brace was applied. The attending physician in the hospital stated that there was definite tenderness at the base of the skull and motions were limited due to Carey's period of immobilization, that there was also tenderness in the lower dorsal spine, that a complete muscle examination disclosed some weakness of the back muscles, particularly between the shoulders. This examining physician in the hospital commented that Carey sustained an injury to his spinal cord through an electrical shock and that apparently there had been a definite neuritis from this accident. This physician suggested that Carey continue with the use of the cervical neck brace for a period of from six to eight weeks. He felt that Carey should show gradual improvement for the next few months but that there was the possibility that Carey would have some permanent disability due to irreparable damage to the spinal cord.

It appears from the evidence that at about 5:00 P.M., July 19, 1954, Carey had dumped his last truck load for the day and had filled his truck tank with gasoline and then walked to the office of the company. Evidently, in his walk to the office of the company his clothes became more or less damp from the heavy fall of rain. Carey went into the office, reached over upon the counter, got his time card, endorsed on the back of it the number of gallons of gasoline he had put in the truck, indicated on the card that he had worked for nine hours, shoved the card over to the night watchman, and turned around. As he turned around, the lightning struck him.

The government high line carrying 4100 volts of electric current brings the current in from the west over the hills. There are six large transformers that reduce the voltage down to where it is further reduced to 220 and 110 volts by transformers which were bought and installed by, and belonged to, the Schroeder Mining Company for which Carey worked. One of the government transformers was not grounded. The ground wire had been cut in two. Schroeder's transformers which were about a hundred and fifty feet west of the office were not, and never had been, grounded. There were lightning arresters on the government high line but none where the Schroeder line was taken off the government line. The circuit that went to the office of the company where the injury occurred had a fuse inside, but the pole located about four feet north of the office building on which the circuit was fixed had no lightning arresters and was not grounded.

When Carey was injured by the flash of lightning which came from the light switch, it appears that he was at a place where he was required to be in the course of his employment. Carey testified to this fact; and Mr. Thompson, office manager and timekeeper for the company, gave testimony to the same effect. It appeared from the record that in the absence of a ground wire the electric current may leap or jump to some conductor to the earth or ground. There was testimony that two previous storms had occurred in the summer of 1954. During one of the storms, a switch was burned out; and during the other, a motor was burned out. These facts clearly show that the lightning was picked up and conducted by wires in that vicinity to the Schroeder office. There was testimony that when there is no ground furnished electric current will jump to metal or a person. An electrician testified that the office building of the company was not grounded, that the pole outside

the office was not grounded, and that the transformers owned by the company never were grounded. There was no conflict in the record as to the fact that the Schroeder electric line which came off the government high line with its high voltage and ran into the office building where the employees had to check out was not safeguarded by being grounded. And there were no lightning arresters where the Schroeder line came off the government line. A witness with electrical training stated that there should be lightning arresters on a 110-volt line. A ground customarily is a rod six or eight feet in length driven into the ground and a copper wire attached which grounds the case of the transformers and all ground connections on lightning arresters and the neutral wire leading to the building.

The trial court took the view that the injury suffered by Mr. Carey was an act of God and the fact that he had checked out by signing the time card before the accident occurred indicated that the injury was not sustained in and did not arise out of the employment.

Our examination of the cases wherein injuries have been sustained by lightning leads us to think that the circumstances shown by this record as being the cause of the accident and the injury established that the case is one wherein an award should have been made to the workman. It is hardly necessary to cite our many cases holding that the Workmen's Compensation Law should be construed liberally in favor of the workman, but see Pope v. Safeway Stores, Inc., 54 Wyo. 266, 91 P. 2d 58, and cases cited.

In the case entitled Bauer's Case, 314 Mass. 4, 49 N.E. 2d 118, it appeared that the claimant was a medical student and was employed at the office of a Boy Scouts' camp in Antrim, New Hampshire. Electricity came to the hospital building of the camp through a

wire attached to a tree just outside the hospital. The claimant in the course of his duties during the period of time when the boys went in swimming wore a bathing suit. During a rainstorm, he had been walking from cabin to cabin seeing boys who were ill as was his duty. His clothes had become quite wet, and he went to the hospital where he stayed and where his clothes were kept to change his clothing. While he still had on his wet clothes and was standing under an electric light and next to a steel bed and near to a light plug and fuse box, lightning destroyed the lights and fuse box and also all the electrical apparatus in the hospital, damaged the wall, and knocked the employee unconscious to the floor, causing injuries and disability that prevented him from returning to his work. He was totally disabled for two months and still suffered a partial disability. One of the reviewing board found that the injury arose out of and in the course of the employment and awarded compensation. The reviewing board affirmed this decision, but the superior court adjudged that the employee did not sustain an injury arising out of and in the course of his employment and dismissed the claim. The employee appealed to the Supreme Judicial Court of Massachusetts; and that court in part said, 314 Mass. 4, 6, 49 N.E. 2d 118, 119:

"In Brooker v. Thomas Borthwick & Sons (Australasia), Ltd. (1933) A. C. 669, 677, quoted in Caswell's Case, 305 Mass. 500, 502, 503, 26 N. E. 2d 328, 330, Lord Atkin said: 'If a workman is injured by some natural force such as lightning, the heat of the sun, or extreme cold, which in itself has no kind of connection with employment, he cannot recover unless he can sufficiently associate such injury with his employment. *This he can do if he can show that the employment exposed him in a special degree to suffering such an injury.*' This principle was applied in cases of injury by lightning collected in Caswell's Case, 305 Mass. 500, 502, 26 N.E. 2d 328." (Italics supplied.)

Additional cases of injuries caused by lightning were cited by the court. The court further said, 314 Mass. 4, 6, 49 N.E. 2d 118, 120:

"Certain facts as to the operation of lightning have become matters of common knowledge, of which judicial notice may be taken. Madura v. New York, 238 N.Y. 214, 144 N.E. 505; DeLuca v. Park Commissioners of Hartford, 94 Conn. 7, 107 A. 611; Emmick v. Hanrahan Brick & Ice Co., 206 App. Div. 580, 201 N.Y.S. 637; Texas Compensation Ins. Co. v. Ellison, Tex. Civ. App., 71 S.W. 2d 309. We think that it could have been found, without expert evidence, that a person in wet clothes, standing close to an iron bed and near to an electric light and electric wiring, in a building on the top of an exposed hill, was in a position of unusual danger from lightning."

The decision of the district court was accordingly reversed and a decree entered for the employee. We are inclined to agree with the views expressed by the Massachusetts court.

In the case of Bales v. Covington, 312 Ky. 551, 228 S.W. 2d 446, the Court of Appeals of Kentucky reached a similar result as did the Massachusetts tribunal although the reasoning was somewhat different from that employed in the Massachusetts case. The Kentucky court in part said, 312 Ky. 551, 553, 554, 228 S. W. 2d 446, 447, 448:

"It is conceded that Covington's death occurred in the course of his employment, but appellant argues that his death did not result from an injury by accident arising out of his employment. Many cases from this and other jurisdictions are cited, but appellant's chief reliance is on Fuqua v. Department of Highways, 292 Ky. 783, 168 S.W. 2d 39, while appellees rely chiefly on Stout v. Elkhorn Coal Company, 289 Ky. 736, 160 S.W. 2d 31. In the Fuqua case, Fuqua, with other members of a maintenance crew, was engaged in cutting weeds and brush on the right of way of a state highway. A thunder storm arose, and the foreman directed the

men to seek shelter. Three men went to the porch of a nearby residence, two got in the cab of the Highway Department truck and Fuqua and two others went into the garage near the residence. Fuqua sat down with his back to a plank leaning against the wall, and was killed when lightning struck the garage. His widow's claim for compensation was disallowed by the Workmen's Compensation Board on the ground that the cause of death had no relation to the employment. On appeal to this court the judgment of the circuit court approving the award of the Board was affirmed on the ground that there was no evidence that there was a greater likelihood of the deceased being struck in the garage than in the truck, on the porch of the house or on the road, and the case of Stout v. Elkhorn Coal Company, 289 Ky. 736, 160 S.W. 2d 31, 33, was distinguished. In the Stout case, Stout was working in a coal mine 112 feet under the ground when he was injured. The proof showed that a bolt of lightning struck a large oak tree on the surface above the point where Stout was working, and followed the roots of the tree to a crack in the ground which extended down to the roof of the room in the mine where Stout was working. There was evidence that the crack in the ground served as a natural conduit for an electrical current. The Workmen's Compensation Board dismissed Stout's application for compensation on the ground that his injuries did not arise out of his employment. This court reversed the judgment affirming the award, and directed that compensation be awarded. The opinion adopted the majority rule in such cases which is that recovery of compensation by workmen injured by lightning is permitted 'if the current of the stroke is aided or assisted in any manner to seek out and land upon the injured servant where he is directed to and is engaged in his work.' After referring to a number of annotations on the subject in American Law Reports, the opinion said:

" 'It is acknowledged—not only by the writer of the annotations, but by some of the courts themselves—that there exists conflict in the opinions of the various courts upon the question as to whether or not an injury produced by an act of God ever becomes compensable under the workmen's compensation acts in any state of

circumstances. But it will also be found that the great majority of the courts have reached the conclusion that the servant is entitled to compensation for injuries produced by lightning in all cases where he "was subjected to a danger from lightning greater than were the other people in the neighborhood; that is, was the danger to which he was subjected one which was incident to the employment, or was it one to which other people, the public generally, in that neighborhood, were subjected?" '

\*　　　　\*　　　　\*　　　　\*　　　　\*

(Citing other cases.)

\*　　　　\*　　　　\*　　　　\*　　　　\*

"The facts in the present case bring it squarely within the rule announced in Stout v. Elkhorn Coal Company, supra, although the interpretation of the phrase 'arising out of the employment' under that rule is not as broad as the interpretation by the courts of some other states. An electrical engineer introduced as an expert witness by the appellees testified that trees and other objects on a high ridge are more likely to be struck by lightning than similar objects at a lower elevation. An expert introduced by appellant conceded that this is true. The horses and the deceased's clothes were wet, and there was considerable metal in the barn, including the trace chains and other metal parts of the harness which the deceased was in the act of removing from the horse. The dirt floor of the barn was damp, and Covington's head was within a foot or two of the metal roof. The evidence was to the effect that all of these conditions combined exposed Covington to unusual danger from lightning. There can be no doubt that the poplar tree standing on a high ridge about 8 feet from the barn with its roots interlocking the roots of the tree used as a corner post, the metal roof on the barn, the proximity of Covington's head to the roof and the dampness, all tended to accentuate the danger from lightning. Obviously, the risk from which the death of Covington arose was one which, by reason of the nature of the employment, was greater than the risk to which the general public was exposed. By reason of his employment he was exposed to this hazard which was a natural incident to his work at that place."

See also Citizens Independent Telephone Co. v. Davis, 121 In. A. 20, 94 N.E. 2d 495; Id., 229 Ind. 217, 97 N.E. 2d 490.

It can hardly be gainsaid that the fact that the transformers and wires leading to the office building of the Schroeder Mining Company without proper grounds being installed placed Carey, the workman, in a situation under all the circumstances here presented which was different from that of the public generally. There can be no doubt that the employer did not take steps to protect its office building from the intrusion of lightning, making an unnecessary hazard for the workmen who were obliged to come there in the course of their duties as workmen for the company.

The judgment of the District Court of Platte County is accordingly reversed with instructions to enter an award in favor of the claimant as it may be found under the law of the State the workman may be so entitled. Additional testimony may be taken to show the extent of the injuries of the workman as they appear at the time the mandate from this court reaches the trial court.

*Reversed with instructions.*

BLUME, J., and HARNSBERGER, J., concur.