**TITLE GUARANTY COMPANY OF WYOMING, Inc., a corporation, Appellant (Third-party defendant below),**

v.

**MIDLAND MORTGAGE COMPANY, an Oklahoma corporation; Richard L. Thornock and Elaine G. Thornock, husband and wife, Appellees (Defendants and third-party plaintiffs below),**

and

Uinta Improvement Company, a Wyoming corporation (Plaintiff below).

**No. 3700.**

Supreme Court of Wyoming.

March 19, 1969.

Robert R. Rose, Jr., Casper, for appellant.

Bill Earl Tom, of Calkins & Tom, Denver, Colo., Lathrop, Lathrop & Uchner, Cheyenne, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

Uinta Improvement Company, appellee, plaintiff below, and Southwestern Construction Company negotiated for the sale and purchase of certain lots in Kemmerer, Wyoming, one of which is the lot in question, and General Investment Company, defendant and third-party plaintiff below, and predecessor in interest to Midland Mortgage Company, appellee, was to make construction loans to Southwestern to be secured by a first mortgage. Title Guaranty Company of Wyoming, Inc., appellant, third-party defendant below, issued an interim binder to General. Title was to act as escrow agent. Uinta conveyed the lot to Southwestern, and Southwestern gave a mortgage to General. Southwestern de-

faulted and General foreclosed. Southwestern had not fully paid Uinta for the lot, Uinta sued General for the balance due, and General joined Title Guaranty as a third-party defendant. The trial court found in favor of Uinta against Midland Mortgage Company, General's successor, in the amount of $2,456.66, and ordered that Midland have judgment against Title for a like amount. Title Guaranty Company appeals.

On September 13, 1963, Title issued its Preliminary Report or Interim Binder No. 0064, at which time title to a certain lot in Kemmerer was vested in Uinta. Title agreed to issue to General its policy of title insurance in usual form, being a mortgagee title guaranty policy in the amount of $15,400, upon payment of a premium of $133.30, and upon the further requirements that (1) a warranty deed from Uinta to Southwestern, and (2) a mortgage executed by Southwestern in favor of General, be recorded. Two endorsements were subsequently issued by Title.

On September 23, 1963, Title wrote General forwarding the said binder 0064 and requesting a construction advance on General's construction loan to Southwestern in the amount of $8,931.40, stating that "It is understood that the note and mortgage will be properly executed by Southwestern Builders and that all requirements in Title Binder No. 0064 will be met prior to disbursement." Said sum was sent to Title by General, and the funds were disbursed by Title. The amount included an item of $133.40, and was referred to by Title as "Title cost."

On October 2, 1963, Uinta as seller, Southwestern as buyer, and Title as escrow agent entered into a "Purchase and Sales Agreement, with Escrow Instructions" for the purchase of certain lots in Kemmerer, including the lot in question, which agreement was recorded October 3, 1963. The purchase and sales agreement provided that the purchase price of the lot in question was $3,100. Uinta was to "execute and deliver to Buyer [Southwestern], a good

and sufficient instrument of deed, conveying title to Buyer to said property." The balance due on said lot was to be paid at the time Southwestern sold the home it was constructing on the lot or within one year from October 2, 1963. Buyer Southwestern was to execute a quitclaim deed to Uinta to be held by the escrow agent (Title) to be delivered to Uinta in the event Southwestern defaulted. Title was to disburse all monies received by it in connection with the purchasing, mortgaging, and construction of said home on the property in accordance with the agreed procedure for disbursing loans, a copy of which was to be attached·and made part of the purchase and sales agreement but is not shown in the record.

Pursuant to the purchase and sales agreement, a quitclaim deed, dated September 13, 1963, was executed by Southwestern in favor of Uinta which deed was recorded January 18, 1965.

By warranty deed dated October 3, 1963, and recorded the same day, Uinta conveyed said lot to Southwestern.

A mortgage deed wherein Southwestern was mortgagor and General was mortgagee was dated September 25, 1963, and was recorded October 3, 1963, following the recording of the deed from Uinta to Southwestern.

Under date of October 10, 1963, Title issued an endorsement attached to and forming a part of interim binder 0064, which stated that "Requirements Nos. 1 and 2 are hereby deleted," and noted that the deed from Uinta to Southwestern was recorded, and the mortgage deed executed by Southwestern in favor of General to secure $15,400 was recorded. Under date of June 10, 1964, Title issued its further endorsement stating "the construction loan commitment is hereby increased" from $15,400 to $19,300, and noted that a mortgage executed by Southwestern in favor of General, dated June 1, 1964, given to secure $3,900, was recorded June 10, 1964. The binder did not mention the purchase and sales agreement, nor did either of the endorsements.

General foreclosed the mortgage and acquired title to the property by virtue of a sheriff's deed.

Thereafter, Uinta commenced an action, subsequently amended, against General for possession of the property or the unpaid purchase price of the lot in the sum of $2,456.66, together with interest and costs.

General denied Uinta's right to possession and right to recover the purchase price, and, by way of third-party complaint against Title, alleged that Title had issued to General an interim binder which stated General had valid mortgages upon said property, and Title was obligated in law and equity to General for any and all sums due to Uinta for the unpaid purchase price of the property and by amendment and additional allegation of negligence on the part of Title and breach of duty to General by Title in not disclosing in the interim binder the existence of a purchase and sales agreement between Uinta and Southwestern. Title denied the allegations of the complaint and the third-party complaint. Title filed its motion for summary judgment based upon the pleadings and affidavit which stated the binder provided, among other things, that said binder would become null and void unless a policy of title insurance was issued within six months of the date of the binder, and that a policy was never issued. The trial court denied Title's motion for summary judgment and ordered that Uinta have judgment against General in the amount of $2,456.66, the stipulated amount of the unpaid balance of the purchase price of the lot, and that General have judgment against Title for a like amount.

Title has appealed from this judgment and alleges several errors:

1. General had waived the right to assert and is estopped from asserting any obligation under the title company binder, since it had fully obligated itself to pay for the land prior to the issuance of the binder;

2. No policy of insurance was ever issued, and the binder by its terms became null and void unless a policy was issued within six months; and

3. Although General moved to amend its pleadings to include an allegation of negligence, the court never ruled on the motion.

### Appellant's Point No. 1

In answering Title's claim of waiver or estoppel, General, in its brief, states that Title did not assert waiver or estoppel and is precluded from doing so now, since, under Rule 8(c), W.R.C.P., waiver and estoppel are affirmative defenses and must be pleaded and raised in the lower court. We have held that waiver and estoppel should be pleaded. Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675. However, General made no objection to the introduction of Plaintiff's Exhibit 1, the purchase and sales agreement, or the many questions asked of witnesses concerning it, and, as a matter of fact, inquired of it from the first witness, which witness was called by General. We said in Porter v. Wilson, Wyo., 357 P.2d 309, a failure to object to proffered evidence constitutes a waiver of the defect. Rule 15(b), W.R.C.P., provides that when issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised in the pleadings. Pasquel v. Owens, 8 Cir., 186 F.2d 263, 271.

Title's basis for contending waiver and estoppel is that General was part and parcel of the purchase and sales agreement and had full knowledge of it.

Kenneth Araas, Vice President of Lincoln County Abstract and Title Company, signed the binder and the two endorsements as agent for Title and testified as follows:

"Q General wasn't a part of that agreement, were they? A No.

"Q Did you ever furnish General Investment with a copy of that agreement? A No. I don't remember.

"Q Did you ever discuss it with them? A I can't remember discussing that particular agreement with them."

"Q Did you have in your own knowledge the fact or knowledge that they had to have a first mortgage before they would make the loan? A Yes, I assumed that they would want a first mortgage."

"Q Okay. Now what if you, as an agent of the company, have personal knowledge of an instrument which might purport to be a lien on the property that you are going to insure for the mortgagee, what would you do in that instance? A I would probably make mention of it.

"Q Now you were familiar with the terms, basically, of the purchase and sales agreement which is now designated as Plaintiff's Exhibit 1, as of September 13, 1963? A Yes.

"Q Did you make any mention of that purchase and sales agreement on Defendant's Exhibit 1, the interim binder? A No."

Orion Lorenzi, Assistant Treasurer of Uinta Improvement Company, participated in and was familiar with the transactions leading up to the execution of the purchase and sales agreement. On cross-examination he testified as follows:

"Q Do you know, of your own knowledge, whether or not any of General Investment's people were in on those negotiations here? A Not that I can recall. I just don't recall any."

W. R. Johnston, an official of Midland, was asked on cross-examination if he knew that General was to pay for the land, to which he replied "No."

There was substantial evidence before the trial court upon which it could reasonably and fairly draw the conclusion that General did not know the lot had not been paid for and that Uinta had an interest in the lot under the agreement, and further, under the terms of the binder, Title

contracted to insure General for the loss incurred. As we said in Gill v. Gill, Wyo., 363 P.2d 86, 87, "the appellate court will give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." General cannot be held to have waived the defect in the title if it did not know of the defect. Gorrell v. City of Casper, Wyo., 371 P.2d 835.

It may be argued that if General knew of the purchase and sales agreement and agreed with Title that they would pay for the lot and by such agreement induced Title to issue the binder without mention of the purchase and sales agreement and the obligation therein of Southwestern to pay Uinta for the lot General had waived any right it may have had under the binder. But, as we have said, there was substantial evidence before the trial court that General did not know of the purchase and sales agreement or the terms thereof. Without the knowledge of the purchase and sales agreement, it cannot be said that General intended to be bound by the provisions of the purchase and sales agreement and thereby waived the right to make any claim under the binder.

■ Even assuming that General did know of Uinta's claim, there is doubt that Title could sustain waiver and estoppel since Title knew of Uinta's claim. Under the general rule, Title would have had to lack knowledge of Uinta's claim in order that estoppel could operate in its favor. Pickett v. Associates Discount Corp. of Wyoming, Wyo., 435 P.2d 445, 447.

■ To protect itself, Title had only to mention the purchase and sales agreement and its pertinent provisions in the binder. Title, as insurer, knew the terms of the purchase and sales agreement, yet issued its binder without exception or requirement as to the purchase and sales agreement. Title cannot now say that the binder should be enforced otherwise than according to its terms. Title delivered to General a

binder and subsequent endorsements which showed that General would have a first mortgage free and clear of all liens. It is held that one of the uncontradicted principles established by the authorities with unanimity is that the burden of proof rests on the party setting up the estoppel to show the grounds on which it rests. Pickett v. Associates Discount Corp. of Wyoming, supra. Title has failed to meet this burden and cannot rely upon any estoppel.

### Appellant's Point No. 2

The "preliminary report or interim binder" issued by Title provided:

"WE HEREBY AGREE That on payment of a premium of * * * $133.30 * * The Company will issue its policy of Title Insurance in usual form as follows:

"Mortgagee Title Guaranty Policy in the amount of $15,400.00 to GENERAL INVESTMENT COMPANY covering the interest as shown above on the real property described as: Lot Number Twenty-three (23) of Block Number Two (2) * * *."

Further requirements under the binder were that the warranty deed from Uinta to Southwestern be recorded and the mortgage from Southwestern in favor of General be recorded.

■ General paid the premium, and the deed and mortgage were obtained by Title and recorded. There was nothing else for General to do. It had complied with all the requirements of the binder. The negotiations were complete and left nothing open for future determination. Title and General entered into an agreement whereby Title was to issue a policy if General did certain things which General did. General, in reliance upon the agreement with Title, advanced monies in the form of construction loans. Title was under a duty to General to disclose to General that the purchase price of the lot had not

been paid and that Uinta might claim some interest under the agreement if Southwestern did not pay Uinta. Title did not tender or refund the premium paid by General. There was a valid and binding agreement to insure and to issue and deliver a policy.

The judgment can be sustained upon the basis of contract between Title and General, and whether or not General's motion for an amendment to include an allegation of negligence was properly ruled upon by the trial court need not be discussed.

The judgment is affirmed.