In the Matter of the Workers' Compensation Claim of James Michael SECKMAN, Appellant (Employee–Claimant),

v.

WYO–BEN, INC., Appellee (Employer–Respondent),

v.

STATE of Wyoming, ex rel. WORKERS' COMPENSATION DIVISION, Appellee (Objector–Defendant).

No. 89–41.

Supreme Court of Wyoming.

Nov. 27, 1989.

Robert T. Moxley, Whitehead, Gage & Davidson, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Josephine T. Porter, Sr. Asst. Atty. Gen., Cheyenne, for appellee, State of Wyo., ex rel. Workers' Compensation Div.

Before CARDINE, C.J., THOMAS, MACY and GOLDEN, JJ., and BROWN, J., Retired.

THOMAS, Justice.

The primary issue in this case focuses upon the statutory requirement for filing a claim for worker's compensation benefits within one year of the injury and is concerned with the jurisdictional nature of that statutory requirement. James Michael Seckman (Seckman) questions whether the trial court, on its own motion, could raise that statute as a bar to a claim for benefits for total temporary disability and contends that the requirement was waived by the Wyoming Workers' Compensation Division. Another issue is presented concerning the ruling by the district court that the loss of use of a prosthetic device, necessitated by the amputation of Seckman's left arm just below the elbow, could only lead to an award on the basis of a vocational disability because Seckman failed to establish a disability that could be rated according to statute. Still another issue concerns Seckman's assertion that he is entitled to the replacement of his unusable prosthetic arm by an improved model. We discern no error by the trial court in this case, and its order denying the several claims is affirmed.

In his brief as appellant, Seckman sets forth these issues:

"I. Did the district court commit error of law or abuse of discretion, in ruling that statutory filing time requirements barred a claim for back payment of temporary total disability, when the merits of the claim had been tried to the court by the consent of the parties?

"II. Did the district court apply an improper rule of law in determining that loss of use of the claimant's prosthesis, proximately caused by the injury to the worker, could not lead to an 'impairment' award, but rather could only be the subject of a 'vocational disability' award?

"III. Was it an error of law for the district court to rule the injured employee not to be entitled to a usable, high technology prosthetic device, under circumstances where the injury permanently rendered the injured employee unable to use the mechanical prosthesis he wore prior to the injury?"

The Wyoming Workers' Compensation Division, as the appellee, identifies the issues in this way:

"I. Whether the district court committed error of law or abuse of discretion in ruling that the statutory filing time requirements of § 27–12–503, W.S.1977, barred a claim for back payment of temporary total disability.

"II. Whether the loss of the use of the prosthesis was an 'injury' and a disability ·as a matter of law."

Seckman's employer, Wyo–Ben, Inc., did not appear or file a brief in this court.

In 1966, Seckman's left arm was surgically amputated just below the elbow because of injuries suffered in an unrelated accident. Since 1967, he used a mechanical prosthesis to substitute for his left hand. Other than obvious problems attendant to the loss of a hand and forearm, Seckman, as he conceded in statements to a rehabilitation counselor, had long since recovered from the effects of that initial injury and the resulting surgery.

Seckman's mechanical prosthesis was one that attached by a leather harness and was operated by a forward pull exerted through the right shoulder. This type of mechanical hand is currently available and still utilized by a large number of people. The primary advantages are that it is reliable and relatively inexpensive. At the time of this accident, Seckman's artificial arm was still functional although it had become quite worn from use over the years. It appears that a repair or replacement was in order even prior to the injury of which he now complains. As of the time of trial, the device was completely unusable because it no longer fit Seckman properly due to his gain in size and weight.

Up until the accident which is the subject matter of this case, Seckman was able to maintain employment in a relatively normal fashion, aided by the use of his prosthesis, although he generally was restricted to work usually described as "light duty." His employment record includes jobs as a machinist, a unit manager, a plant foreman, a construction laborer, a sporting goods store owner and operator, and a

traveling salesman for a local laundry. At the time of his injury, he was employed by Wyo–Ben, Inc. where he worked as a mill "clean-up" man. He was working in that capacity when he suffered the accident that led to this claim and the appeal before this court. He left that job in November of 1981 because he was no longer able to endure the pain from his injury as it was aggravated by his duties on the job.

The accident that caused the injuries resulting in this claim occurred about July 10, 1981. Seckman was carrying a large trash can up a ramp that was elevated approximately two feet. While so engaged, he slipped on some grease and fell backwards to the concrete floor, landing hard on his tailbone. In the course of the fall, he struck a pipe with his neck and right shoulder. He was not wearing his prosthesis at the time of the fall.

Soon after he fell, Seckman consulted a general practitioner. It was obvious at the time that he had suffered an injury, but the scope and substance of the injury were not fully apparent. This created some basis for a dispute over his entitlement to worker's compensation benefits. Nevertheless, Seckman was awarded $409.64 in temporary total disability payments covering the two weeks extending from July 12 through July 25, 1981. This was the total amount that he had requested. Because Seckman felt that his condition might be deteriorating, or that it might be more severe than indicated by the original diagnosis, he then consulted specialists who were able to more accurately ascertain the full extent of his injury.

In March of 1983, Seckman filed a claim for major surgery and hospitalization and, on August 5, 1983, he received further worker's compensation benefits. The court deferred action on his request for retroactive benefits for temporary total disability until a later date. His award was conditioned by a requirement that a subsequent hearing be held, following a disability rating being provided by his treating physician, with the purpose of that hearing being to determine Seckman's entitlement to any permanent partial disability. He was ordered to reimburse the Workers' Compensation Division for any monies expended by it in the interim if it were found, at the hearing, that he was not entitled to further benefits. This contemplated hearing never was held. Instead, Seckman continued to receive temporary total disability benefits until he was awarded the amount of $18,091.35 for permanent partial disability. This award was premised upon a stipulation of the parties, dated April 30, 1986, that Seckman was entitled to a forty-five percent (45%) disability rating applicable to his upper extremities.

During the course of the case, a dispute developed as to whether Seckman was entitled to a retroactive award of benefits for a temporary total disability from the period of September, 1981 to August, 1983. Essentially, this dispute centered upon the fact of disability, and the issue was presented for trial on July 14, 1988. Seckman claimed that he could not have returned to work during these months and, for that reason, he was entitled to the award of temporary total disability. The employer's records, however, showed some sporadic work attendance during the same period. Further, there is evidence in the record that Seckman may have received disability payments from November, 1981 to July, 1982 for an unrelated condition involving kidney problems. The issue of entitlement never was resolved, however, because the trial court, *sua sponte*, pointed out Seckman's failure to comply with § 27–12–503, W.S.1977, and it then denied any award of back payments on that ground alone. With respect to loss of use of the prosthesis, the court acknowledged that a disability award could be sustained relating to the loss of use of the prosthetic device under appropriate circumstances, but it ruled that Seckman had not carried his burden of showing a sufficient vocational disability culminating in a diminution of earning capacity so as to justify such an award in this case.

The court also ruled that even though Seckman's prosthesis had to be repaired or replaced at state expense because its use had been impaired by the injuries to his right arm and shoulder, the proper ap-

proach to replacement should be "parsimonious" and that all further claims for benefits, including claims for a specific prosthesis, should be considered as new claims. If contested, they are to be handled by the office of administrative hearings. We note, parenthetically, that, in recent years, numerous innovations have been achieved in the prosthetic appliance field of medical science. Various new devices have been offered. One of these is an electric apparatus known as a "Utah" arm. It is less reliable than a mechanical prosthesis and considerably more expensive, but it does have the advantage of being controlled through nerve impulses instead of through the use of a harness thus avoiding the inherent drawback of chafing and irritating as well as certain limitations in the event the controlling member is somehow limited in either mobility or strength. For potential trial in the future is the question of whether Seckman properly could be fitted with another mechanical harness device that would not irritate his injured shoulder as Seckman's orthopedic surgeon indicated in his expert testimony. This appeal is taken from the trial court rulings denying the temporary total disability award, the claim for disability because of the loss of use of the prosthetic appliance, and the denial of an order to provide the more sophisticated appliance.

 Before resolving the issues in this case, we recall that the right to benefits from our state-sponsored worker's compensation fund is a right granted solely by virtue of a constitutional amendment that has been implemented through legislative enactment. See Wyo. Const. art. 10, § 4. *Matter of Johner,* 643 P.2d 932 (Wyo.1982); *Tompkins v. George Rinner Construction Company,* 196 Kan. 244, 409 P.2d 1001 (1966). No such right existed at common law. Indeed, the very existence of the fund is a product of legislative action. Unlike most statutes that abrogate common law rights and must, for that reason, be strictly construed (*State v. Stovall,* 648 P.2d 543 (Wyo.1982); *Mahaney v. Hunter Enterprises, Inc.,* 426 P.2d 442 (Wyo. 1967)), the Wyoming Worker's Compensation Act (Act), §§ 27–12–101 to 27–12–805,

W.S.1977, is to be interpreted in a reasonably liberal fashion so that the legislative goals that obviously are intended may be accomplished. *Lehman v. State, ex rel. Wyoming Worker's Compensation Division,* 752 P.2d 422 (Wyo.1988); *Matter of Abas,* 701 P.2d 1153 (Wyo.1985); *Herring v. Welltech, Inc.,* 660 P.2d 361 (Wyo.1983); *Matter of Barnes,* 587 P.2d 214 (Wyo. 1978); *Lichty v. Lichty Construction Company,* 69 Wyo. 411, 243 P.2d 151 (1952); *In re McConnell,* 45 Wyo. 289, 18 P.2d 629 (1933). Whenever possible, the Act should be applied in favor of the workman (*Conn v. Ed Wederski Construction Company,* 668 P.2d 649 (Wyo.1983); *Claim of Carey,* 74 Wyo. 37, 283 P.2d 1005 (1955)), so that industry, and not the individual employee, bears the burden of accident and injury occurring within the industrial setting. *Lehman; State, ex rel. Wyoming Worker's Compensation Division v. Malkowski,* 741 P.2d 604 (Wyo.1987); *Matter of Shapiro,* 703 P.2d 1079 (Wyo.1985); *Baker v. Wendy's of Montana, Inc.,* 687 P.2d 885 (Wyo.1984); *Jim's Water Service v. Eayrs,* 590 P.2d 1346 (Wyo.1979); *Mor, Inc. v. Haverlock,* 566 P.2d 219 (Wyo.1977); *In re Gimlin,* 403 P.2d 178 (Wyo.1965). In order to achieve that end, we are afforded, under our precedent, a degree of flexibility in interpreting the various provisions of the Act.

 This latitude with respect to interpretation does not, however, encompass the freedom to extend the Act, under the guise of liberal construction, to injuries and situations that do not fall within the language adopted by the legislature. *Lehman; Baskin v. State, ex rel. Wyoming Worker's Compensation Division,* 722 P.2d 151 (Wyo.1986); *Abas; Matter of Van Matre,* 657 P.2d 815 (Wyo.1983); *Mor.* Neither have we been afforded the freedom to ignore clear statutory provisions. *Olson v. Federal American Partners,* 567 P.2d 710 (Wyo.1977). We must exercise restraint and adhere strictly to the literal terms of the Act, despite our rule of liberal construction in favor of the injured workman, when addressing limitations or conditions directly mandated by the legislature even though

they have the effect of abridging or precluding any worker's entitlement to benefits that otherwise would be appropriate.

■ This case presents one such situation. The district court applied § 27–12–503, W.S.1977, which was in effect at the time of Seckman's injury. It subsequently was replaced by § 27–14–503, W.S. 1977 (June 1987 Repl.), but the statute in effect at the time of the injury is controlling. Cf. *Shapiro; Wyoming Refining Company v. Bottjen*, 695 P.2d 647 (Wyo. 1985). That statute provided, in pertinent part:

> "(a) No order or award for compensation involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time, shall be made unless in addition to the reports of the injury, an application or claim for award is filed with the clerk of court in the county in which the injury occurred, within one (1) year after the day on which the injury occurred or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee. *The reports of an accident do not constitute a claim for compensation.*" Section 27–12–503, W.S. 1977 (emphasis added).

The statute requires, in language that is clear and unambiguous, that no worker's compensation benefits can be awarded for an injury that is the result of a single brief occurrence unless the claimant files his application or claim for an award within one year from the time the injury was incurred. See *Bauer v. State, ex rel. Worker's Compensation Division*, 695 P.2d 1048 (Wyo. 1985). We can provide no other construction as a matter of law. *People v. Platte Pipe Line Company*, 649 P.2d 208 (Wyo. 1982); *Olson*. Any adjustment of this requirement must be the sole responsibility of the state legislature and is not one within our judicial province. *Johner, In re Sikora*, 57 Wyo. 57, 112 P.2d 557 (1941). See *In re Martini*, 38 Wyo. 172, 265 P. 707 (1928).

■ Seckman simply did not meet this one-year deadline. The accident which caused his injury occurred in July of 1981, and he filed a claim for benefits at that time. That claim was granted in full. Seckman suspected that his injuries might be more serious than they were first diagnosed, and he sought the advice of specialists, who were able to pinpoint the problems resulting from his injury and were able to more accurately estimate the impact upon his employment. As he suspected, the extent of the damage was more severe than previously determined by his general practitioner. Even though he then recognized that the gravity of his injuries had been expanded, the expansion did not constitute a new or newly discovered injury because the physical damages all resulted from the single occurrence in July of 1981. The extent of the injuries did not result from a subsequent deterioration or a second event.

*State, ex rel. Wyoming Worker's Compensation Division v. Malkowski*, 741 P.2d 604 (Wyo.1987), is a case similar in nature, but it is readily distinguishable from Seckman's claim for back payments. In *Malkowski*, the court upheld an award of temporary total disability benefits even though the claim was filed more than four years after the last treatment and almost six years after the first compensable injury because the claimant's condition, though constantly deteriorating, had not deteriorated to the point of requiring additional surgery until just before the time of the additional temporary total disability. When the additional surgery became necessary, and not before, the deterioration reached a point at which a second compensable injury was deemed to have occurred. Recognizing that a single industrial accident can give rise to more than one compensable injury (*Pacific Power and Light Company v. Rupe*, 741 P.2d 609 (Wyo. 1987)), we noted that Malkowski then had one additional year from the time he was diagnosed as needing surgery to make application for an award. Section 27–12–503, W.S.1977 (June 1983 Repl.). Malkowski submitted such a claim, and this court held the application was timely. Seckman has not submitted any claim for a second injury that can be identified. Instead, even though *Malkowski* provided the district

court with authority to grant benefits on Seckman's second claim for major surgery and hospitalization that he submitted in March of 1983, Seckman's claim for retroactive temporary total disability is founded solely on the injury that occurred in July of 1981. Seckman should have filed his application within one year from that date, but he did not. He waited until March of 1983 to file for the temporary total disability benefits, a date approximately twenty months after the injury for which he seeks past payments and well beyond the twelve-month limit.

■ We discern nothing in the record to support any suggestion that the running of the statute was tolled on equitable grounds because the failure to make the timely filing was due to any wrongful or fraudulent conduct of his employer. See *Bauer.* Therefore, pursuant to legislative fiat, we are obliged to apply § 27–12–503, W.S. 1977, and affirm the denial by the trial court of Seckman's claim for additional temporary total disability benefits. See *Lehman; Baskin; Abas; Van Matre; Mor.* See also *Platte; Olson.* There is no error on the part of the district court in denying this claim for benefits, and its ruling on that issue is affirmed.

■ Seckman insists that the statute was waived and, therefore, inapplicable because the merits of the case were tried to the court without objection by the Workers' Compensation Division. He relies upon *Title Guaranty Company of Wyoming v. Midland Mortgage Company,* 451 P.2d 798 (Wyo.1969), and *Simpson v. Western National Bank of Casper,* 497 P.2d 878 (Wyo. 1972), and buttresses his contention with the assertion that issues will be treated as if they had been raised in the pleadings when they are tried with the express or implied consent of the parties. We are cognizant of the rule that issues which are not raised in the pleadings will be treated as if they had been properly raised when they are addressed by evidence and argued at a trial, and there is no timely objection by any of the parties. Rule 15(b), W.R. C.P.; *Simpson.* The justification for this rule is that, when parties fail to object to evidence and argument that addresses issues which are not pleaded, they have given implied consent to the trial of those matters even though there is no proper notice. See *Macy v. Macy,* 714 P.2d 774 (Wyo.1986). When the rule is applicable, a party is deemed to have implicitly consented to trial of the issue and is generally regarded as having waived his right to claim any error in that regard. The thrust of Seckman's contention is that by failing to raise the statute of limitations and proceeding with the trial on the merits, the Wyoming Workers' Compensation Division waived the statute of limitations that might otherwise pertain. Seckman's approach indeed is innovative, but the significance of the waiver rule articulated in Rule 15(b), W.R.C.P., is not one of loss of issues that were not raised in the pleadings if they otherwise are properly available; instead, that rule relates to the inclusion within the resolution of the dispute of issues not raised in the pleadings that were actually presented and resolved by the trial. In this instance, neither party is contending for the recognition of the disposition of any issues omitted in the pleadings.

The significant concern is with the statute of limitations. We appreciate that the defense of the statute of limitations can be, and usually is, asserted as an affirmative defense required to be stated in the pleadings. The rule of waiver can apply to that defense if it is not so raised. In this instance, however, the thrust of the statute of limitations is distinguished from other instances because the filing of the claim is a jurisdictional prerequisite to the assertion of the claim. The failure to file the claim results in the lack of subject matter jurisdiction, and that defect is present whether or not the merits of the case have been tried to the court. The right to compensation pursuant to the Act is one structured by legislation, and the legislature is entitled to limit that right in appropriate ways. In this instance, compliance with the mandatory statutory requirement of the timely filing of the claim is a condition precedent to the granting of an award. See *Rogulj v. Alaska Gastineau Mining Company,* 288 F. 549 (9th Cir.1923); *London Guarantee*

& Accident Company v. Industrial Commission, 83 Colo. 252, 263 P. 405 (1928). See also Annotation, Workmen's Compensation—Time for Claim, 78 A.L.R. 1294 (1931). No claim for relief is available unless the statutory conditions are satisfied.

The net effect of this rule is that the district court is without the judicial power, or subject matter jurisdiction, to award benefits under the Act in the absence of a statutory entitlement which depends upon compliance with the requirements of the statute. We do not perceive that there exists any flexibility in this regard with respect to construing the statute, and any changes must be the result of legislative intervention. Johner; Sikora. The courts in this state are without subject matter jurisdiction to award benefits under the Act unless the condition precedent of the timely filing of an application is satisfied, and the case presenting any claim for retroactive total disability payments in an instance such as this must be dismissed.

Because the condition precedent was not fulfilled, the district court simply had no jurisdiction to award the benefits. This lack of subject matter jurisdiction, unlike jurisdiction in personam, is not subject to waiver by the parties, and neither this court nor the trial court has any power to disregard the statute. See Matter of Contempt Order Issued Against Anderson, 765 P.2d 933 (Wyo.1988). Furthermore, our rule is that the absence of subject matter jurisdiction can be asserted by either party, or by the court, at any time in the course of the proceedings. The district court was required to dismiss Seckman's claim sua sponte once it became apparent that it was without jurisdiction. This action by the district court was entirely appropriate, and the court should be commended for its application of the pertinent statutes. While Seckman's contentions would be correct and appropriately applied under the right circumstances, they do not meet the issues in this instance and, consequently, we affirm the dismissal of that claim.

Seckman's second issue relates to the finding by the district court that his loss of use of his prosthesis had to be addressed under a "vocational impairment" test. The court then ruled that his claim "has not been proved by a preponderance of the evidence, as Employee–Claimant has shown no diminution of earning capacity as a result of his work-related injury." The district court denied Seckman's claim for loss of use of his prosthesis for that reason although it did rule that he is entitled to the repair of the artificial arm to the extent of putting it back to the usable form it was in prior to the accident "including revisions to the harness mechanism, and compensation for any prosthetic apparatus that is necessary as a result of the work-related injury to the right arm and shoulder." Seckman's claim here is that the district court erred in treating the loss of use of his prosthesis in the context of a vocational disability, instead of an "impairment," since that device now is completely unusable because of the injuries to his right arm and shoulder. He urges the proposition that the loss of a prosthetic arm is to be treated as equivalent to the loss of a living member since, in many cases, the loss of either has much the same result. Specifically, he asserts that he is entitled to "schedule" benefits set at 140 weeks of compensation. He further asserts, with respect to the adequate replacement of the prosthesis, that such replacement is a specific added benefit to which he is entitled. His position is that the replacement of the artificial arm is unrelated to any "impairment" award. The obvious extension of this combination of claims is the implication that he need not prove diminution of income because he is claiming "impairment" benefits, not vocational disability.

In support of these contentions, Seckman cites § 27–12–102(a)(xii), W.S.1977, which provides, in pertinent part:

"'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance * * *."

He also cites § 27–12–403(a), W.S.1977, the pertinent provisions of which read:

"Permanent partial disability means the loss or permanent impairment of a limb

or sense, or any other injury known to surgery or medicine to constitute permanent impairment of a bodily function." Seckman then ties in the statement from a leading text that:

"Under most acts, if an injury has left the claimant with a permanent bodily impairment, compensation for a specified number of weeks is payable without regard to presence or absence of wage loss during that period. For loss (and usually loss of use) of members, arbitrary schedules of the number of weeks for which compensation is payable are provided; for other permanent impairments, a calculation of percentage of total permanent disability is ordinarily made. Although in many jurisdictions the schedule award is the exclusive remedy whenever applicable, some courts are beginning to treat the loss of specific members as amounting to percentage disabilities of larger members, or of the entire body, when this more fairly reflects the actual effect of the injury, and to make awards for actual wage loss when wage loss in fact persists after the expiration of the schedule period. In any event, the schedule is not exclusive if the effects of the injury extend to other parts of the body." 2 A. Larson, The Law of Workmen's Compensation § 58.00, at 10–311 (1989).

■ Section 27–12–102(a)(xii), W.S.1977, indeed, does include within the definition of injury the loss of use of a prosthesis. Certainly, a factual situation could be visualized pursuant to which a claimant could receive an award for the loss of use of an existing prosthesis because of a work-related injury. The statute goes on to provide, however, that any permanent partial disability rating depends upon the fact that the loss or impairment of a limb, including that occurring to a prosthesis, must be permanent. Section 27–12–403(a), W.S. 1977. As a matter of law, a claim for such an award depends upon the demonstration of permanent loss or impairment. See *Fischer v. State, ex rel. Wyoming Worker's Compensation Division,* 734 P.2d 558 (Wyo.1987). See also *Matter of Injury to Potter,* 715 P.2d 214 (Wyo.1986). The stat-

ute is not subject to being construed in any other fashion. See *People v. Platte Pipe Line Company,* 649 P.2d 208 (Wyo.1982); *Olson,* 567 P.2d 710. Seckman's citation to 2 A. Larson, The Law of Workmen's Compensation, § 58.00, at 10–311, adds support for this construction in the pertinent quotation, "[u]nder most acts, if an injury has left the claimant with a *permanent* bodily impairment * * *."

■ There exists a presumption that any compensable injury is temporary. The burden of proof to overcome this presumption is assigned to the claimant. *Alco of Wyoming v. Baker,* 651 P.2d 266 (Wyo. 1982); *Gifford v. Cook–McCann Concrete, Inc.,* 526 P.2d 1197 (Wyo.1974); *Black Watch Farms v. Baldwin,* 474 P.2d 297 (Wyo.1970); *Pease v. Pacific Power & Light Company,* 453 P.2d 887 (Wyo.1969).

■ The district court found, following the hearing, that Seckman's loss of use of his prosthesis had not been shown to be permanent. The product of that finding is that he is not entitled to an award for impairment. The materials in the record support this decision. Expert testimony indicates that Seckman's prosthetic arm might be repairable and, thus, fully restored to its prior usefulness. Even if that existing device is not repairable, that would not sustain an award for impairment based on loss of use of this specific unit. Contrary to the position espoused by Seckman, loss of a "medical member," or prosthesis, is not the same as loss of a "living member," and we cannot ignore the proposition that interchangeability of different types of prosthetic devices is practical. That proposition clearly complies with the legislative intent reflected in the Act. Replacement of a prosthesis with another unit of equal, or better, utility results in a nonpermanent loss and justifies denial of any award for "impairment."

The only relevant issue in this case is whether repair or replacement is possible. Further expert testimony is included in the record demonstrating that replacement of Seckman's prosthesis with an equivalent, or even improved unit, is likely. Seckman,

in effect, confesses that proposition by requesting the replacement of his prosthesis with an improved device. If his demand is satisfied, there is no permanent impairment in the context of the Act. Until any court or executive agency order for the repair or replacement is found to be inadequate to restore Seckman to his prior condition, his claim for an award for "impairment" is not ripe. We cannot thwart the intent of the legislature by granting an award contrary to the language of the Act. *Lehman; Baskin*, 722 P.2d 151; *Abas; Matter of Van Matre*, 657 P.2d 815 (Wyo.1983); *Mor*. We have no freedom to extend the coverage of the worker's compensation statute beyond the legislative mandate. *Pacific Power and Light v. Parsons*, 692 P.2d 226 (Wyo. 1984). We affirm the district court on the second issue asserted by Seckman.

This result specifically refutes Seckman's premise that there is no relationship between his statutory right to a replacement prosthesis, § 27–12–406, W.S.1977, and his asserted right to an "impairment" award. Those two remedies are intertwined, and there is no possibility of sustaining "impairment" benefits in the event that the damaged or unusable prosthesis can be repaired or replaced so as to restore the claimant to his condition prior to the injury.

■ Even so, the district court did determine that Seckman could be entitled to worker's compensation for a vocational disability if a diminution of income was demonstrated because of this injury. Section 27–12–402, W.S.1977. This determination is premised on our rule that, "[i]n worker's compensation law, disability means an impairment of earning capacity." *McCarty v. Bear Creek Uranium Company*, 694 P.2d 93, 94 (Wyo.1985). The burden of establishing the impairment of earning capacity is assigned to Seckman. See *Alco; Gifford*. The district court ruled that he had not satisfied this burden, and we find nothing in the record to demonstrate otherwise. The determination of the district court that Seckman is not entitled to benefits for vocational disability also is affirmed.

■ We do not address Seckman's final issue because it is not ripe for review. The parties agreed that Seckman would be evaluated at some future time to determine what would be required to repair or replace his prosthesis pursuant to § 27–12–406, W.S.1977. They also agreed that Seckman's request, whatever it might be, then would be treated as a new claim. If contested, that claim will be presented to the Office of Administrative Hearings. There has not yet been a determination as to the kind of replacement prosthesis Seckman should have, and the situation stands as one in which he has failed to exhaust his administrative remedies. *Park County Resource Council, Inc. v. United States Department of Agriculture*, 817 F.2d 609 (10th Cir.1987); *Rocky Mountain Oil & Gas Association v. Watt*, 696 F.2d 734 (10th Cir.1983); *People v. Fremont Energy Corporation*, 651 P.2d 802 (Wyo.1982); *City of Cheyenne v. Sims*, 521 P.2d 1347 (Wyo.1974). Consequently, no review of that issue is appropriate until those remedies have been completed.

The order of the district court in this case is affirmed in all respects.