949 P.2d 865 (1997)
In the Matter of the Worker's Compensation Claim of Howard O. HAAGENSEN, Appellant (Petitioner/Claimant),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent/Objector).
No. 96-133.
Supreme Court of Wyoming.
December 4, 1997.
*866 J. Stan Wolfe, Gillette, for Appellant.
William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Jennifer A. Evans, Assistant Attorney General, Cheyenne, for Appellee.
Before TAYLOR, C.J., and THOMAS, MACY, and LEHMAN, JJ., and HANSCUM, D.J.(Ret.)
TAYLOR, Chief Justice.
The sole issue presented is whether the finding of the hearing examiner that Howard O. Haagensen sustained injuries "arising out of and in the course of employment" as required by Wyo. Stat. § 27-14-102(a)(xi) (Cum.Supp.1995) is supported by substantial evidence. The finding is controverted since Mr. Haagensen fell in the parking lot of his employer, Nelson's Oil and Gas, two and one-half to three hours after ending his work shift. We agree with the district court's finding that Mr. Haagensen's injury did not occur in the course of his employment and, therefore, affirm the district court's order reversing and remanding the case to the Office of Administrative Hearings.

I. ISSUES
Appellant, Howard O. Haagensen (Haagensen), states the issues as follows:
A. Was there substantial evidence to support the Hearing Examiner's Award of Benefits to the Employee/Claimant for Workers' Compensation Benefits?
B. Did the District Court err in reversing the Hearing Examiner's determination, finding the Appellant was not injured in the course of employment, thus denying benefits in this matter?
Appellee, State ex rel. Wyoming Workers' Compensation Division (Division), states the issue as:
A. Whether the Office of Administrative Hearings Findings of Fact, Conclusions of Law And Order awarding workers' compensation benefits for an injury which occurred two and one-half to three hours after the end of the injured employee's work shift is supported by substantial evidence and in accordance with law.

II. FACTS
Haagensen was an employee of Nelson's Oil and Gas, a Conoco gas station and convenience store in Sundance, Wyoming, where he performed duties as a clerk and cook. On June 29, 1995, Haagensen's shift began at 2:00 p.m. and ended shortly after midnight when he clocked out. Haagensen usually remained on the premises of his employer after clocking out for a period of fifteen minutes to one hour to rest his legs, which often hurt following a shift, and to visit with a clerk on duty and a co-worker. On June 30, 1995, Haagensen remained on the premises for two and one-half to three hours, sitting in a booth, drinking coffee and visiting with another off-duty co-worker and the night clerk.
Between 2:30 a.m. and 3:00 a.m., Haagensen left the gas station through the rear door as he usually did. Approximately four feet from the back door, he tripped over a stack of wood left by construction workers hired by Nelson's Oil and Gas causing him to fall to the ground. As a result of the fall, Haagensen sustained a rotator cuff injury to his right shoulder for which he seeks worker's compensation benefits.
The Division denied benefits on the basis that Haagensen's injury did not occur in the scope of his employment as required by Wyo. Stat. § 27-14-102(a)(xi). Following an evidentiary hearing on Haagensen's appeal, the hearing examiner found the injury "ar[ose] out of and in the course of his employment" and awarded benefits, stating:
35. Given that the employee here did nothing out of the ordinary while resting *867 and visiting at the work place, the hazard did not change during his lengthy interlude before leaving, the visiting and drinking coffee was helpful to employee morale, the employer never objected to these late visits, and the employer had no rule or policy about leaving after shift changes, the mere extension of time from that held to be "a reasonable time" in other opinions is not enough to rebut the presumption that the employee was injured while leaving work on the employer's premises.
On the Division's appeal for judicial review, the district court found Haagensen was not in the course of his employment when the injury occurred and his claim was not compensable. Haagensen appeals from the Order Upon Petition for Judicial Review.

III. STANDARD OF REVIEW
This court's review of administrative action or inaction is confined to the record and is limited by W.R.A.P. 12.09(a) to those matters specified in Wyo. Stat. § 16-3-114(c) (1997), which provides the reviewing court shall:
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
* * * * * *
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
We do not afford deference to the reviewing court's findings, but we do, however,
afford respect and deference to an administrative agency's findings of fact if they are supported by substantial evidence. Aanenson v. State ex rel. Wyoming Workers' Compensation Div., 842 P.2d 1077, 1079 (Wyo.1992) (quoting State ex rel. Wyoming Workers' Compensation Div. v. White, 837 P.2d 1095, 1098 (Wyo.1992)). "Substantial evidence" is a term of art, best described as "relevant evidence that a reasonable mind can accept as adequate to support an agency's conclusion." Casper Oil Co. v. Evenson, 888 P.2d 221, 224 (Wyo.1995). Further, we consider only that evidence favoring the party prevailing below, leaving out of consideration conflicting evidence. Wyoming Steel and Fab, Inc. v. Robles, 882 P.2d 873, 876 (Wyo. 1994) (quoting Matter of Injury to Carpenter, 736 P.2d 311, 312 (Wyo.1987)). * * * Unlike its findings of fact, however, an administrative agency's conclusions of law are afforded no special deference, and will be affirmed only if truly in accord with the law. Matter of Cordova, 882 P.2d 880, 882 (Wyo.1994). See also Wyo. Stat. § 16-3-114(c).
Coleman v. State ex rel. Wyoming Workers' Compensation Div., 915 P.2d 595, 598 (Wyo. 1996) (emphasis added).

IV. DISCUSSION
The Wyoming Workers' Compensation Act provides compensation for work-related injuries as defined in Wyo. Stat. § 27-14-102(a)(xi):
"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. * * *
(Emphasis added.)
The requirement that the injury "aris[e] out of and in the course of employment" is premised upon a determination whether the relationship between the injury and the employment is sufficient that the injury should be compensable. A causal connection exists between the employee's injury and the course of employment when "`there is a nexus between the injury and some condition, activity, environment or requirement of the employment.'" Stuckey v. State ex rel. Wyoming Workers' Compensation Div., 890 P.2d 1097, 1098 (Wyo.1995) (quoting Bearden v. *868 State ex rel. Wyoming Workers' Compensation Div., 868 P.2d 268, 270 (Wyo.1994)).
The general rule for an injury arising in the course of employment is set out in 1 Arthur Larson, Workers' Compensation Law § 14 (1997):
An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.
Normally, an injury sustained outside the hours of employment are not compensable, but Haagensen points to our seminal cases where we adopted the premises rule. Archuleta v. Carbon County School Dist. No. 1, 787 P.2d 91 (Wyo.1990); State ex rel. Wyoming Workers' Compensation Div. v. Miller, 787 P.2d 89 (Wyo.1990). In Archuleta, we defined the premises rule and discussed its application to periods immediately before and after work:
"As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunchtime are compensable, * * *." 1 A. Larson, The Law of Workmen's Compensation § 15.00 at p. 4-3 (1989). * * *
* * * * * *
We noted in Corean [Matter of Injury to Corean, 723 P.2d 58 (Wyo.1986)] that on-premises accidents are, indeed, most often causally connected to employment, thereby suggesting that a presumption created by rule might have considerable validity, albeit not the conclusive validity argued for in Corean. A trend toward adoption of a premises rule, insofar as it creates a rebuttable presumption of causal connection, has been foreshadowed by a number of our prior decisions. * * * It is a logical progression now to extend that proposition to such necessary incidents of the employee's service as punching a time clock or entering and leaving the employer's premises during those periods immediately before and after work. Indeed, we have previously upheld a worker's compensation claim for an injury arising from a dangerous condition on the employer's premises even though the claimant, at the time of the injury, had completed his daily shift and had finished filling out his time card. Claim of Carey, 74 Wyo. 37, 283 P.2d 1005 (1955). * * *
* * * Accordingly, we hold that where the elements of the premises rule, as set forth above, have been established, a rebuttable presumption arises that the employee's injury is causally connected to his employment.

Archuleta, 787 P.2d at 93-94 (emphasis added).
2 Arthur Larson, Workers' Compensation Law, supra, at § 21.60(a) discusses what constitutes a reasonable time interval before and after work and the preparatory and incidental acts that occur:
The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts. The rule is not confined to activities that are necessary; it is sufficient if they can be said to be reasonably incidental to the work. What constitutes a reasonable interval depends not only on the length of time involved but also on the circumstances occasioning the interval and the nature of the employee's activity.

(Emphasis added and footnotes omitted.)
This court addressed the issue of reasonable time interval in a situation where the employee had quit his job and was returning home in Claims of Naylor, 723 P.2d 1237, 1241-42 (Wyo.1986):
"The issue of reasonableness may also turn on the question of what the employee was doing during the interval before leaving the premises, and whether his activity bore any relation to his employment or was purely personal. * * *
* * * * * *
"On the other hand, it is quite possible for an employee, whose employment has ended, to remain at a place of employment such as a restaurant, taking on the *869 status of customer or member of the public. * * * Moreover, when the employee for a substantial amount of time before leaving is engaged in an unmistakably personal pursuit, such as picking up pieces of coal for his own use, fooling with an unlicensed motorcycle, or playing cards and drinking, the interlude is not within the course of employment." 1A Larson, The Law of Workmen's Compensation, § 26.10, pp. 5-285 to 5-292 (1985).
(Emphasis added.)
Haagensen's injury occurred two and one-half to three hours after he had completed his work shift causing it to fall outside the realm of "immediately * * * after work" as discussed in Archuleta. The issue becomes whether Haagensen's injury occurred within a reasonable time interval after his work shift ended so as to qualify as a compensable injury. Our focus shifts to the circumstances occasioning this time interval and the activities of Haagensen during this interval.
Haagensen does not contend nor does the record show that his activities were due to the control of his employer, but he does assert that he was clearly within the ambit of his duties, that is, leaving the premises following the conclusion of his work. Haagensen testified that on June 30, 1995, he remained on his employer's premises for approximately two and one-half to three hours after clocking out from his work shift. He remained to rest his legs, to drink coffee and visit with both a co-worker who was also off-duty and the night clerk. He stated that he did not perform duties for his employer after clocking out.
In the instant case, we are satisfied that Haagensen failed to prove the elements of the premises rule and did not benefit from a rebuttable presumption that his injury was causally connected to his employment. Specifically, Haagensen failed to show he was in the course of his employment at the time he sustained the injury. We cannot say if the employer benefitted by allowing Haagensen to remain after work for such a long time and rest his legs or by improved morale of the employees as he contends, but at some point in time soon after he had clocked out, Haagensen's remaining on the employer's premises had no connection with his employment or the employer's business. His drinking coffee with and talking to another off-duty employee on the premises must be characterized as solely pursuing his own personal purposes. Any reasonable period involving preparation for leaving or any activity reasonably incidental to work had expired long before Haagensen's injury took place. No causal link exists between the occurrence of the injury and a risk connected with his employment. While Haagensen presents numerous cases where benefits were awarded and states these cases are controlling, they can be distinguished on their facts.

V. CONCLUSION
We hold that substantial evidence does not exist to support the finding of the hearing examiner that Haagensen's injury "ar[ose] out of and in the course of his employment," and therefore, its decision is not in accordance with the law. We find Haagensen did not suffer a compensable injury under the Wyoming Workers' Compensation Act. We affirm the district court's Order Upon Petition for Judicial Review.
HANSCUM, District Judge (Retired), dissenting.
I must respectfully dissent from the majority's reversal of the hearing examiner's award of worker's compensation benefits in this case. The hearing examiner's determination comports with the traditions and purposes underlying the State of Wyoming's system of "job insurance" as that system has evolved over the years while the majority decision in this case does not. The majority's current "refinding" of the facts in this case and its disinclination to accept the hearing examiner's correct application of the "on-premises" presumption disembody Wyoming's "on-the-job" insurance only somewhat less than Henry VIII's action against Anne Boleyn. Nary an "appellatectomy" of this worker's benefits is indicated much less the evisceration of a longstanding rule of worker's compensation law.
*870 I would affirm the hearing examiner's award because the facts merit the application of the legal presumption that the injury was work-related and thus compensable. Archuleta v. Carbon County School District No. 1, 787 P.2d 91 (Wyo.1990). Alternatively, this Court should affirm the hearing examiner's decision by recognizing a derivative presumption whose simplicity and logic would compel affirmance of the hearing examiner's award in this case and would also be instrumental in the disposition of future like appeals.
At a fact-finding hearing held in Sundance, Howard O. Haagensen was referred to as "Swede." If it please, I shall do likewise. At the time of his injury, Swede was a man in his late fifties who worked as a clerk and cook at Nelson's Oil and Gas. He was given to stay over on the work premises for periods of time following the completion of his midnight-ending shift to rest his "weary legs," to share humor, and to generally provide camaraderie and support to the graveyard shifters. Whether "on clock" or not, Swede was the type of guy who gave old-fashioned, Wyoming-type support to his fellows at work. At the hearing, Laraya Royer, one of Swede's co-workers, warmly related to the fact finder: "I'm tired after we get off work so Swede stays with me and we have coffee and talk until I can get woken up enough to drive home." This is proof that it was a common practice for employees to linger after work in support of one anothercertainly benefitting employment purposes.
Disaffirming the award, the majority opinion relies on isolated comments and vignettes in the testimony which emphasize the quantity of the stayrather than also analyzing the character of it and its quality. The "reasonableness" of the stay is not merely a matter of marshalling ticks on a clock. We must delve deeper. Some of the evidence is subtle, but a careful analysis of the record reveals very substantial facts which, together with reasonable inferences, establish the existence of the presumption and serve as the factual predicate for the hearing examiner to apply it to this case. Accordingly, it is necessary to briefly allude to the record evidence which is unelucidated in the majority opinion and to highlight certain facts discussed in the majority opinion but whose significance went unheeded. Such a review will illuminate the sound foundation for an award of benefits and ample cause for affirmance on appeal.
The importance of Swede extending a helping hand to his fellow late shifters and the significance of the unpaid services thereby rendered to his employment seem to have escaped the majority's attention. Swede's own words bespeak an air of mere chivalry: "Oh, maybe sometimes if the lady has to go out and bag pumps or something, we'll watch the cash register in case somebody came in." In fact, this testimony proves much more; namely, that Swede actually engaged directly in a work activity on the premises after he punched out that night. Moreover, if, while "watch[ing] the cash register," Swede had been killed in a holdup, he would be just as dead a clerk as any paid employee serving in that capacity. Indeed, the majority fails to credit Swede with the increased security that his very presence adds to the premises and the attendant reassurance which it brings to solo-staffing female convenience store clerks and safety-conscious employers alike. Doubtless, these tangible, as well as esoteric, factors involving Swede's post-shift presence at the store influenced the fact finder who is the best equipped to assess their import and reasonablenesssimilar to a jury assessing a personal injury case.
The reasonableness of the post-shift time on the premises, augmented by specifically found facts and circumstances, demonstrates that Swede was there for his employer and co-employees. Whether in application of the "on-premises" presumption or in the construction of factual findings independent of that evidentiary rule, a uniquely fact intensive environment is created such that the weighing of the two-sides of the scale properly should be left with the on-site trier of fact. Hillard v. Marshall, 888 P.2d 1255, 1260 (Wyo.1995). The job insurance system, which was designed to be there for Swede, unfortunately dissipates here in the wash of two nonfact-finding appellate tribunals. This Court should not mucky pup with the fact-finding province in this case.
The undisputed facts are: Swede was injured while leaving work through a clearly *871 marked employee exit door where a defective condition awaited him which had remained unchanged and unremedied from the time he punched out until the time he left the premises. He remained on the work site continuously during that interval. Ms. Royer, the beneficiary of Swede's largess, punched out with Swede and left approximately one-half hour before Swede. Query: Would her stay be deemed "reasonable" under the majority opinion which finds Swede's stay to be unreasonable? Does one-half hour turn a reasonable stay into an unreasonable one? What about fifteen minutes, seventeen minutes, or thirty-eight minutes? The point is: Whether reasonableness is considered strictly a time construct or a mixed construct of time and activity, isn't this all best left for the trier of fact? Instead of conducting an ad hoc appellate review of reasonableness, is it not a far better approach to affirm this case and augment the premises presumption rule with the following renaissance holding: Where an employee, who stays over on the work premises following a work shift in continuous and uninterrupted furtherance of the employer's interests and with the employer's knowledge, suffers an injury due to a defect on the premises which was in existence at the time the employee's normal work shift ended and remained unchanged and unremedied during the period of staying over, the period of staying over does not affect the compensability of the injury. Such a rule would, as worker's compensation intended, focus on the condition and safety associated with the premises as the object of the "on-the-job" query rather than obsessing on the hour of day on the punch clock or analyzing the post-shift motivations of well intended workers in carryover service to their employer's interests.
This is to say nothing of the adverse impact of the majority's decision between and among co-employees, inter sese. The Wyoming work place should be a fair place. Being "at work" should imply being at a place that is safe, and that, when properly there, any worker should receive the benefits of the employment relationship which are available to all employees on the work premises. Any result which has the effect of discriminating between and among on-premises employees whose presence advances the employment enterprise constitutes an invidious serendipity which ill-befits "The Equality State."
This case calls to mind the Latin maxim, ratio legis est anima legis, "[t]he reason of law is the soul of law." BLACK'S LAW DICTIONARY 1136 (5th ed.1979). Why should a worker be denied the benefits of a system designed to promote the safety of the work place when the same premises condition would have caused the injury three minutes or three hours after the shift ended? Are premises or people paramount under the fabric of our job insurance, employee-employer coexistence system in Wyoming? Finally, why should this Court arbitrate over ticks of the clock? The reason of the majority opinion is lost on me, but the soul of the state-administered pact between worker and employer lies housed in a safe work place for workers and the preservation of compensation for our injured workers.
An appellate dissection of the facts which severs this case from the on-premises coverage presumption impales this rule of law and deals a disharmonious blow to the symbiotic employer-employee relationship. This case cries out for reinstatement of the original factual findings as regards Swede and for the benefit of the efficient administration of the justice system. The district court's reversal of the award of benefits should be overturned, and the benefits properly due Swede should be restored.