Ed SIDWELL, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Respondent).

No. 97–216.

Supreme Court of Wyoming.

April 14, 1999.

Michael D. Newman of Honaker, Hampton & Newman, Rock Springs, WY. Argument by Mr. Newman, for Appellant.

William U. Hill, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General. Argument by Mr. Haggerty, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

A hearing examiner denied injured worker Ed Sidwell's (Sidwell) claim for permanent partial disability benefits. The hearing examiner found that Sidwell had voluntarily sought and accepted a lower paying job, a job he had applied for prior to his work-related back injury. From this, the hearing examiner concluded that Sidwell had not lost any earning power because of his injury, and he was thus not entitled to benefits. Sidwell petitioned for review with the district court, which affirmed the hearing examiner's decision.

We affirm.

## ISSUES

Appellant Sidwell presents the following issues for our review:

Did the Office of Administrative Hearings act arbitrarily, capriciously, or otherwise unlawfully within the meaning of W.S. § 16–3–114(c), in ruling that Petitioner was not eligible for a permanent partial disability award pursuant to W.S. 27–14–405(h) on the grounds that any decrease in income was voluntary and he had applied for the same lesser paying job with his employer prior to his second work related injury?

Was the Office of Administrative Hearings' decision denying benefits supported by substantial evidence within the meaning of W.S. § 16–13–114(c)?

Appellee Worker's Compensation Division (Division) states the issue:

A. The Employee underwent surgeries for two separate low back injuries. After his second surgery he sought a lower-paying job, in part, to avoid re-injuring his back. After a third back injury he sought, and accepted, the same lower-paying job. The OAH denied permanent disability for the third injury because the Employee lost no "earning capacity" and his job change was "voluntary."

Was the Hearing Examiner's Decision supported by substantial evidence and in accordance with law?

## FACTS

This appeal arises from the latest of three back injuries suffered by Ed Sidwell. Sidwell first injured his lower back in 1973 while employed as a diesel mechanic in Utah. As a result, he underwent disc removal surgery. In 1991, Sidwell again injured his lower back, this time while employed as a diesel mechanic for Cummins Intermountain, Inc. of Rock Springs (Cummins). Shortly thereafter, Sidwell underwent spinal fusion surgery. After

* Chief Justice at time of oral argument; retired November 2, 1998.

recovering from this surgery, Sidwell returned to work for Cummins as a diesel mechanic.

In September of 1994, a position in the Cummins parts department became available. Sidwell applied for the position because the physical demands of being a mechanic were getting "tougher and tougher every day." Sidwell was not hired for the parts department position at that time.

In November of 1994, Sidwell suffered another back injury while using a slide hammer to remove fuel injectors from an engine. Sidwell was diagnosed with a back strain just above the point of the fusion. Although this injury did not require surgery, Sidwell participated in occupational therapy, which included a work conditioning program designed to enable him to return to work as a mechanic. As a result of the 1994 injury, Sidwell received a one percent increase in permanent physical impairment, bringing his whole body impairment to a total of 15 percent. While recuperating from this injury, Sidwell kept in close contact with the branch manager at Cummins, Craig Palmer. Sidwell informed Palmer that he wished to return to work in a less physically demanding position, preferably in the parts department. Sidwell believed a position in the parts department would be less strenuous and would prolong his career.

In June of 1995, Sidwell's chiropractor issued a medical release enabling him to return to light duty work for two weeks before resuming work at normal capacity. When Sidwell presented this release to Palmer, the manager told Sidwell that there was no light duty work at Cummins and that he would have to obtain a full medical release before he could return to work. Around the same time, a position in the Cummins parts department became available.

After obtaining a full medical release, Sidwell returned to work in July of 1995. He was temporarily assigned to fill the vacant parts department position. Pursuant to company policy, Cummins posted a job announcement for this position, and Sidwell applied. While the bidding for the position proceeded, Sidwell continued to work in the parts department but was paid his previous diesel mechanic's wage, $17.25 per hour. Sidwell eventually received the parts department position, which pays $14.41 per hour.

In an attempt to alleviate this wage discrepancy, Sidwell applied for a permanent partial disability award. The Division did not approve Sidwell's claim for benefits, finding that the wages were comparable. After a contested case hearing, a hearing examiner from the Office of Administrative Hearings (OAH) also denied Sidwell's claim for benefits. The hearing examiner's findings included the following:

> 22. In light of the fact that the employee had applied for a position as a parts man at the rate of $14.00 per hour prior to his injury, and after the injury was offered that job and accepted that position, the Office finds that there was no apparent loss of earning capacity and any decrease in income was voluntary.

Sidwell filed a petition for review with the district court, and the district court affirmed the hearing examiner's decision. Sidwell timely appeals that decision.

### STANDARD OF REVIEW

When considering an appeal from a district court's review of agency action, we accord no special deference to the district court's conclusions. *Manning v. State ex rel. Worker's Compensation Div.*, 938 P.2d 870, 872 (Wyo. 1997). Instead, we review the case as if it had come to us directly from the administrative agency. *Id.* at 872–73. Judicial review of administrative decisions is limited to a determination of the matters which are specified in Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997), which mandates that the reviewing court shall:

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> * * *
>
> (E) Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute.

Whether Sidwell is entitled to permanent partial disability benefits is a question of fact. *State ex rel. Worker's Compensation Div. v. White*, 837 P.2d 1095, 1097 (Wyo.1992). We afford respect and deference to an agency's findings of fact if they are supported by substantial evidence. *Haagensen v. State ex rel. Workers' Compensation Div.*, 949 P.2d 865, 867 (Wyo.1997). "Substantial evidence" is a term of art, best described as relevant evidence that a reasonable mind can accept as adequate to support an agency's conclusion. *Id.* On appeal, our task is not to reweigh conflicting evidence, but only to examine the record to determine if substantial evidence supports the agency's conclusion. *Wyoming Steel & Fab Inc. v. Robles*, 882 P.2d 873, 876 (Wyo.1994). Therefore, we examine only the evidence which favors the prevailing party, allowing every favorable inference, while omitting consideration of any conflicting evidence. *Id.*

### DISCUSSION

Sidwell claims he is entitled to a partial disability award based on his reduction in wages, from $17.25 per hour which he earned as a mechanic to the $14.41 he now earns in the parts department. Sidwell bears the burden of proving, by a preponderance of the evidence, all essential elements of his claim. *Matter of Workers' Compensation Claim of Jacobs*, 924 P.2d 982, 984 (Wyo.1996). Sidwell's claim, including the nature and amount of benefits, is governed by laws in effect at the time of his 1994 injury. *Id.*

The applicable statute, Wyo. Stat. Ann. § 27–14–405 (Michie 1997), provides in pertinent part:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent partial disability award subject to the following terms and conditions:

(i) The injured employee is ***because of the injury, unable to return to employment at a comparable or higher wage*** than the wage the employee was earning at the time of injury;

(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) The employee has actively sought suitable work, considering the employee's health, education, training, and experience.

(Emphasis added.) Under this section, an injured worker may be eligible for an award similar to what was previously known as loss of earning capacity or impairment of earning capacity. *See State ex rel. Worker's Compensation Div. v. White*, 837 P.2d at 1097 (establishing seven-factor test used to determine impairment of earning capacity under former statute). The hearing examiner found that Sidwell had no apparent loss of earning capacity and that any decrease in income was voluntary. The hearing examiner determined that "in light of the fact that the Claimant had applied for [the parts] position prior to the injury, the Office of Administrative Hearings specifically finds that the Claimant has not satisfied his burden of proof."

Sidwell argues the decision was improper because "voluntary decrease in income" is not listed in § 27–14–405(h). Although "voluntary decrease in income" is not a factor mentioned in § 27–14–405(h), the clear import of the hearing examiner's decision is that Sidwell was not, because of his injury, unable to return to work at a comparable or higher wage. Thus, the question is whether, under subsection (i), Sidwell was "because of the injury, unable to return to employment at a comparable or higher wage" than the wage he was earning at the time of his injury.

Substantial evidence supports a finding that Sidwell was not, because of his injury, unable to return to work at a comparable or higher wage. First, the record establishes that Sidwell would have taken the parts department position, and the accompanying pay cut, regardless of his injury. Sidwell originally applied for the parts department posi-

tion prior to his 1994 injury, knowing full well that it paid less than the mechanic position. After rehabilitating his back, Sidwell again sought the parts position.

Second, the record confirms that Sidwell was given a full medical release to return to work as a diesel mechanic. Although some evidence indicates that Sidwell was advised not to return to work as a mechanic after the 1994 injury, the evidence from Sidwell's health care providers is contradictory. Both his occupational therapist and spine surgeon recommended that Sidwell not return to work as a mechanic. However, Sidwell's chiropractor later issued a full medical release. Palmer, the Cummins branch manager, interpreted this release to mean Sidwell was "healed well enough to return back to his normal duties as a journeyman diesel mechanic." More important, Sidwell testified that he was physically capable of doing the mechanic work and would have returned to work as a mechanic if the parts department position had not been available. Palmer confirmed that Sidwell would have been assigned to work as a mechanic if he had not been needed, and later hired, in the parts department.

When viewed through our "substantial evidence" spectacles, the evidence outlined above establishes that Sidwell was given a full medical release to return to work and that he was physically capable of performing the work of a mechanic. Instead of returning to work as a mechanic, Sidwell sought and accepted the lower paying parts department position, a position he would have taken prior to his injury had it been offered. This supports the hearing examiner's finding that Sidwell voluntarily took a pay cut. There was, thus, substantial evidence to establish that Sidwell was not, because of his injury, unable to return to employment at a comparable or higher wage.

Sidwell also contends that the hearing examiner acted improperly because he did not determine whether Sidwell's pre- and post-injury wages were "comparable." Sidwell is correct in asserting that the Division, in its final determination letter, based its denial of benefits on a finding that Sidwell's $17.25 per hour pre-injury earnings and $14.41 per hour post-injury earnings were comparable. Sidwell, presenting no authority, argues that the hearing examiner was thus limited to deciding only whether the wages were comparable. However, in its "Notice of Referral For Hearing," the Division disclosed that the issue to be decided was "Denial by the division of disability award." Thus, contrary to Sidwell's assertion, the referral by the Division was not limited to the comparable wage issue. Moreover, the record reveals that Sidwell did not limit his presentation of evidence to the comparable wage issue. As discussed above, substantial evidence supports a finding that Sidwell voluntarily took the lower paying job. Given this, the hearing examiner was not required to determine whether, under the circumstances presented here, Sidwell's pre- and post-injury wages were comparable.

## CONCLUSION

There was conflicting evidence whether Sidwell was, because of his injury, unable to return to work at a comparable or higher wage. The hearing examiner found that Sidwell voluntarily sought and accepted a lower paying job, a job he would have accepted before his injury had it been offered. We hold that the hearing examiner's decision denying benefits is supported by substantial evidence.

Affirmed.