2002 WY 150

Robert DONAGHY and Elise Donaghy, husband and wife, Appellants (Petitioners),

v.

The BOARD OF ADJUSTMENT OF the CITY OF GREEN RIVER, acting by and through its agents and members, Appellee (Respondent).

No. 01–206.

Supreme Court of Wyoming.

Oct. 7, 2002.

Robert and Elise Donaghy, Pro Se.

Karen L. Marty of Marty & Ragsdale, Green River, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1]  This appeal arises from a dispute between Robert and Elise Donaghy (the Donaghys) and Jim and Helen Metziner (the Metziners) regarding the Metziners' attachment of fiberglass panels to the 2x4 rafters of their wooden patio structure, that structure having existed prior to the passage, in 1987, of Green River's zoning ordinance. The City of Green River ultimately issued a building permit authorizing the fiberglass panels' attachment.  The Donaghys challenged the building permit's issuance before the Board of Adjustment of the City of Green River (the Board), arguing that the permit was issued improperly and that the attachment of fiberglass panels to the wood-

* Chief Justice at time of expedited conference.

en patio structure violated Green River's zoning ordinance. The Board concluded that the building permit was properly issued and that the attachment of fiberglass panels did not change the basic wooden patio structure or alter it to a degree that it would violate the zoning ordinance. The Donaghys appealed this decision to the district court. The district court affirmed the Board's decision, and this appeal followed. We affirm.

## ISSUES

[¶ 2] The Donaghys, as appellants, state the issues on appeal as follows:

A: Issuance of a building permit *after* the construction was complete. The grandfathered structure was *significantly altered* by the overlay of a solid, highly reflective and precipitation discharging fiberglass roof (an increase in nonco[n]formity and an increase in total amount of space in area).

B: The overlay of fiberglass panels resulted in a change of use which is prohibited by ordinance, and cannot be considered simply a repair.

C: The setback requirement is violated since the fiberglass is placed into the setback, and angled such that nearly all precipitation that accumulates on the fiberglass roof is propelled onto the Appellant's property.

D: The Green River Board of Adjustment did not consider Appellant's contention that the fiberglass cannot be assimilated into the environment.

(Emphasis in original.) The Board, as appellee, essentially responds to the issues raised by the Donaghys within the context of the applicable standard of review.

## FACTS

[¶ 3] The Donaghys and the Metziners are neighbors on Sunset Street in Green River. In the 1960s, a predecessor to the Metziners constructed a wooden patio structure on what is now the Metziners' property, and a cement block privacy fence along the lot boundary between the properties now owned by the Metziners and the Donaghys. Based on the documentation and photographs contained in the record, the patio structure apparently consists of a wooden structure that supports a series of "closely spaced" wooden 2x4 "rafters," to use the Donaghys' terminology, which are angled vertically toward the cement block privacy fence and the Donaghys' property. A forty-one year resident of the neighborhood recalled that in the past (without further qualification as to the relevant time period), a light canopy had periodically been used to cover the wooden patio structure (he imagined that the canopy was tacked to the structure, presumably to the series of 2x4 rafters), and had been informed that a roll-up awning had similarly been utilized. In August 1999, the Metziners attached fiberglass panels to the wooden patio structure's 2x4 rafters.

[¶ 4] In December 1999, the Donaghys filed a Citizen Action Request with the City of Green River, complaining that the Metziners violated the city's zoning ordinance by attaching the fiberglass panels to the wooden patio structure's 2x4 rafters and that the Metziners also subjected the Donaghys to "lawn sprinkler damages" and "floodlight harassment." Pursuant to this request, the city building inspector investigated the alleged zoning ordinance infractions and indicated by letter that the attachment of fiberglass panels did "not increase the area of the shed," nor did it "increase the amount of nonconformity with respect to setbacks or height limitations." Subsequently, apparently at the city's suggestion, Helen Metziner submitted a building permit application dated January 31, 2000, stating that the fiberglass panels had been installed "on an existing patio cover to replace canvas awning that had dis[i]ntegrated" and that "I did not know I needed a permit." The City of Green River issued a building permit to the Metziners on February 2, 2000 authorizing them to "put fiberglass roofing on existing shed."

[¶ 5] The Donaghys challenged the issuance of the building permit before the Board. Following a hearing on April 6, 2000, during which documents, arguments, and sworn comments were received on behalf of both parties, the Board found that the building permit was properly issued and that the Zoning Ordinance of Green River, Wyoming, Ap-

pendix B, § 9.5(B) and (C)(2) (1987) (Zoning Ordinance) permitted the attachment of the fiberglass panels to the wooden patio structure's existing 2x4 rafters because it did not change the basic wooden patio structure or alter it to a degree that it would violate the zoning ordinance. The Donaghys appealed this ruling to the district court, which affirmed the Board, and this appeal followed.

## STANDARD OF REVIEW

[¶ 6] We accord no special deference to the district court's decision and will consider the case as if it came directly from the agency. *In re Jensen,* 2001 WY 51, ¶ 9, 24 P.3d 1133, 1136 (Wyo.2001). Our review is limited to a determination of the factors specified in Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2001). The reviewing court shall:

Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) and (E). We recently held that the substantial evidence test is the appropriate standard of review in appeals from Wyoming Administrative Procedures Act contested case proceedings when factual findings are involved and both parties submit evidence. *Newman v. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91, ¶ 22 [49 P.3d 163] (Wyo.2002). We further held, that when only the party with the burden of proof submits evidence in the contested case proceeding and that party does not ultimately prevail, the arbitrary or capricious standard governs the judicial review of that agency decision. *Id.* Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may be found to be arbitrary or capricious for other reasons.

*Id.* at ¶ 23. We do not examine the record only to determine if there is substantial evidence to support the board's decision, but we must also examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it. *Id.* at ¶ 24, ¶ 25. [When both parties present] cases-in-chief, we apply the substantial evidence standard. We afford respect and deference to a hearing examiner's [in this case, the Board's] findings of fact if they are supported by substantial evidence. *Haagensen v. State ex rel. Workers' Compensation Div.,* 949 P.2d 865, 867 (Wyo.1997). Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. [*State ex rel. Wyoming Workers' Compensation Div. v.] Waggener,* 946 P.2d [808] at 814 [(Wyo. 1997)]. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Id.* Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.* A hearing examiner's conclusions of law are afforded no special deference and will be affirmed only if truly in accord with law. *State ex rel. Wyoming Workers' Compensation Div. v. Barker,* 978 P.2d 1156, 1159 (Wyo.1999).

*Kuntz–Dexter v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2002 WY 101, ¶ 10, 49 P.3d 190, 192–93 (Wyo. 2002).

## DISCUSSION

[¶ 7] In order to establish a context for resolving the issues raised by the Donaghys, we note that it is undisputed that the Metziners' wooden patio structure existed prior to the passage, in 1987, of Green River's zoning ordinance. The Donaghys and the Board have analyzed the issues in this matter beginning with the premise that the Metziners' wooden patio structure is "nonconforming" in "use" and/or "structure." We will follow their lead for purposes of this case.[1] Zoning

---

1. *See Snake River Brewing Co., Inc. v. Town of Jackson,* 2002 WY 11, ¶ 26 n. 7, 39 P.3d 397, 407

Ordinance § 9.5 addresses non-conforming uses:

### Section 9.5. Non-conforming Uses.

Any use or structure in existence in the city on the effective date of this ordinance that complied with all previously applicable legal and safety requirements is deemed to be legally non-conforming. A non-conforming use occurs when any property is used for a purpose or in a manner that does not conform to the use regulations, as described in the table of uses, Section 9.2, for the zoning district in which it is located. A non-conforming structure is a structure that does not conform to the height and bulk requirements for the zoning district in which it is located. Such legally existing non-conforming uses and structures are not subject to the provisions of this chapter, yet any changes to such use or structure shall meet the following requirements:

(A) *No Area Enlargement:* A non-conforming use may be continued on the same land area and within the same floor area as that which existed on the date when the use first became non-conforming. The area occupied by a non-conforming use within an existing structure or tract of land may not be enlarged or extended.

(B) *Structural Alteration:* Except as provided herein, no person or persons may engage in any activity that causes an increase in the extent of non-conformity of a non-conforming structure. In particular, physical alteration of a non-conforming structure is unlawful if such activity results in:

(1) An increase in the total amount of space devoted to a conforming use; or

(2) Greater non-conformity with respect to dimensional restrictions such as setback requirements or height limitations.

(C) *Termination:*

(1) If active and continuous operation of a non-conforming use is discontinued for a period of eighteen (18) consecutive months, the structure or tract of land shall subsequently be used only for a conforming use.

(2) The right to operate and maintain a non-conforming primary structure shall not terminate if the structure is damaged or destroyed in any manner. Repair or replacement of such damaged or destroyed structures shall be permitted, providing that the repair or replacement will comply with Section 9.5(B) of this ordinance. Any non-conforming structure may be repaired or upgraded, so long as the extent of non-conformity is not increased.

(Emphasis in original.) In addition, the Zoning Ordinance defines "use" as the "purpose for which land or a building is designed, arranged or intended, or for which land or a building is or may be occupied" and "non-conforming use" as one "which lawfully occupied a building or which was a lawfully permitted use on a zone lot at the time this ordinance, or amendments thereto, became effective that does not conform to the use regulations of the district in which it is located." Zoning Ordinance § 1.7(B)(89), (122). A "structure" is anything "constructed or erected with a fixed location on the ground" and a "non-conforming structure" is one "existing on the effective date of this ordinance, or amendments thereto, that does not conform to the provisions of this ordinance nor to the use regulations of the district in which it is located." *Id.* at § 1.7(B)(88), (120).

[¶ 8] The Donaghys first argue that it is apparent from the wooden patio structure's construction that the structure was not intended to support a roof, but was designed to be an "open air patio covering." They cite to a photograph of the patio structure, noting that the structure's 2x4 rafters are "closely spaced," and from this photograph, conclude that the wooden patio structure was designed to be an "unobtrusive, weather resistant, open air patio covering, permitting the free escape of cooking smoke, and the free entrance of diffuse sunlight." The addition of fiberglass panels to the patio structure, according to the Donaghys, therefore increased

n. 7 (Wyo.2002).

the non-conforming "use" of the structure in violation of Zoning Ordinance § 9.5(B). They argue that the fiberglass panels functionally changed the use of the structure because the structure now discharges precipitation onto the Donaghys' property and reflects light from the Metziners' security floodlights, which light interferes with Mrs. Donaghy's amateur astronomy. The wooden patio structure's "new" use, then, is "to reflect light and discharge precipitation" and the Metziners "knowingly overlayed a solid reflective (of light) and discharging (of precipitation) fiberglass roof upon an open air grandfathered structure converting it into a private nuisance. . . ."

[¶ 9] Despite this functional analysis, the Board received other evidence which it could reasonably accept in concluding that the attachment of fiberglass panels to the wooden patio structure's existing 2x4 rafters did not change the purpose for which the structure was designed, arranged, intended, or might be occupied, or otherwise increased the extent of any non-conformity in relation to the structure's past use. It is undisputed that the Metziners did not alter the wooden structure underlying the fiberglass panels, and upon examination, the building inspector concluded that the attachment of fiberglass panels did not increase the structure's area. Further, the wooden structure included a series of 2x4 rafters, and the Metziners attached the fiberglass panels to these rafters to replace a canvas awning that had disintegrated. A light canopy (likely "tacked" to the structure's rafters), as well as a roll-up awning, had similarly been used in the past to periodically cover the structure. Indeed, pursuant to the terms of this particular zoning ordinance, the Metziners could conceivably have reattached a canvas, or similar, covering indefinitely for the same use, which the Donaghys do not dispute. *See, e.g., Horwitz v. Dearborn Tp.*, 332 Mich. 623, 52 N.W.2d 235, 236–37 (1952).

[¶ 10] Based on this evidence, the Board could properly conclude that the Metziners' attachment of fiberglass panels to the structure's existing 2x4 rafters merely constituted an "upgrade" in material consistent with the wooden patio structure's past use, as opposed to a change or expansion in its use. Zoning Ordinance § 9.5(B) and (C)(2), which the Board cited in conjunction with its findings, would seem to permit such a circumstance. Accordingly, given the applicable standard of review, we must defer to the Board's findings in this respect.

[¶ 11] Based on their assertion that the wooden patio structure's "new" use is to "reflect light and discharge precipitation," the Donaghys further argue that Zoning Ordinance § 9.5(C)(1) was violated because a covering over the structure's 2x4 rafters was absent for more than eighteen consecutive months. Zoning Ordinance § 9.5(C)(1) states:

> If active and continuous operation of a non-conforming use is discontinued for a period of eighteen (18) consecutive months, the structure or tract of land shall subsequently be used only for a conforming use.

This argument was not presented to either the Board or the district court nor does the argument appear to be jurisdictional or fundamental in nature. We "strongly adhere to the rule forbidding us to 'consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court,' except for those issues which are jurisdictional or are fundamental in nature." *Bredthauer v. TSP*, 864 P.2d 442, 446 (Wyo.1993) (*quoting Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991)).

[¶ 12] The Donaghys next assert that the attachment of fiberglass panels to the wooden patio structure violates the setback requirements found in Zoning Ordinance §§ 2.3(8), (10) and 9.5(B) because the panels increase the structure's non-conformity in that regard. Zoning Ordinance § 2.3 establishes minimum setback requirements for principal buildings and uses, as well as accessory uses, while section 9.5(B) states:

> *Structural Alteration:* Except as provided herein, no person or persons may engage in any activity that causes an increase in the extent of non-conformity of a non-conforming structure. In particular, physical alteration of a non-conforming structure is unlawful if such activity results in:
> * * *

(2) Greater non-conformity with respect to dimensional restrictions such as setback requirements or height limitations.

In advancing this argument, the Donaghys have not directed us to any evidence contained in the record indicating that the attachment of fiberglass panels resulted in a *greater* non-conformity as to the ordinance's setback requirements. The Board had before it the building inspector's finding that "the addition of a fiberglass roof would not increase the amount of non-conformity with respect to setbacks or height limitations." It is undisputed that the underlying wooden patio structure existed prior to the ordinance's passage and that the Metziners did not alter the underlying wooden patio structure in attaching the fiberglass panels. It is not apparent from the photographs contained in the record that the fiberglass panels meaningfully exceed the dimensions of the underlying wooden patio structure, and the Donaghys do not make such an allegation. It follows that if the underlying structure violated the ordinance's setback requirements, that structure's non-conformity was "grandfathered" because it existed prior to the ordinance's passage, and that, absent some alteration to the underlying structure, attaching fiberglass panels to the structure's 2x4 rafters did not increase any existing setback non-conformity.

■ [¶ 13] The Donaghys also contend that attaching the fiberglass panels, a solid surface, to the wooden patio structure essentially doubled the land area covered by the structure, and significantly increased the structure's total surface area, because prior to the addition of a solid surface, only empty space existed between the structure's 2x4 rafters. Zoning Ordinance § 9.5(A), the only ordinance section cited by the Donaghys in advancing this argument, provides as follows:

*No Area Enlargement:* A non-conforming use may be continued on the same land area and within the same floor area as that which existed on the date when the use first became non-conforming. The area occupied by a non-conforming use within an existing structure or tract of land may not be enlarged or extended.

This argument is misplaced. It is undisputed that the Metziners did not alter the underlying wooden patio structure, and the Board had before it the building inspector's finding that the attachment of fiberglass panels did "not increase the area of the" structure,[2] as well as evidence regarding the past use of materials to cover the structure. Accordingly, substantial evidence supports the conclusion that the land and floor area, as well as the area occupied by the "use" of the structure, remained unchanged.

[¶ 14] The Donaghys next argue, citing Zoning Ordinance § "2.1# 4 and # 5" and referring to these numbered sections as "Residential District Regulations," that the Board erred by failing to consider factors such as certain "negative impacts" to the Donaghys' property, drainage requirements, "general appropriateness" in location and site design, and whether fiberglass could be "assimilated into the environment." Zoning Ordinance § 2.1 is found in "Chapter 2. Residential District Regulations." That particular section does not contain subsections enumerated as "4" or "5." However, Zoning Ordinance § 2.1(B)(2)(d) does contain subsections enumerated as "4" and "5," as well as language consistent with that utilized by the Donaghys in advancing this argument. Specifically, Zoning Ordinance § 2.1(B)(2)(d) provides as follows:

(B) *Criteria for Zone Establishment:*
\* \* \*

(2) *Mobile Home Zone Establishment Criteria:*
\* \* \*

(d) In addition, a mobile home subdivision shall:
\* \* \*

4. Minimize any negative impacts on surrounding neighbors or neighborhoods.

5. Meet all applicable residential criteria concerning utilities, drainage, street and parking design and construction, landscaping and general ap-

---

2. The Donaghys' attorney also acknowledged at the hearing that the Metziners did not alter the wooden patio structure's square footage in attaching the fiberglass panels.

propriateness and quality in terms of location and site design.

(Emphasis in original.) The Donaghys have not directed us to any evidence contained in the record indicating that the Metziners' wooden patio structure is located in a "mobile home subdivision." Therefore, this particular zoning ordinance section appears to be inapplicable to the circumstances of the instant case.

[¶ 15] Finally, the Donaghys assert that the Board erred in concluding that the building permit was properly issued because the permit was issued over five months after the Metziners attached the fiberglass panels to their wooden patio structure. However, based on the Board's findings, and the particular circumstances of this case, it does not appear that the Metziners were necessarily required to obtain such a permit. Zoning Ordinance § 1.6(C)(7) provides as follows:

Permits shall not be required for structures existing nor for the use of any structure or land area established prior to the effective date of the zoning ordinance. Any modifications to existing structures or changes of use of any structure [or] land area performed after the effective date of the zoning ordinance shall require permits as provided by this ordinance.

The Board found, specifically citing Zoning Ordinance § 9.5(B) and (C)(2), that attaching fiberglass panels to the wooden patio structure's existing 2x4 rafters did not change the basic wooden patio structure or alter it to a degree that it would violate the zoning ordinance. In other words, the Board concluded that the attachment of fiberglass panels in this manner did not alter or modify the wooden patio structure, change the structure's use, or increase any non-conformity concerning the structure or its use. We previously detailed the substantial evidence supporting these findings. Absent some structural modification or change of use, it does not appear that a building permit was required.[3] This approach coincides with the seemingly broader pronouncement contained in Zoning Ordinance § 1.4(A) as to the ordinance's intended application:

The enactment of this ordinance shall not prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure is used at the time the ordinance takes effect, and it shall not be necessary to secure any permit or certificate permitting such continuance; provided, however, that any *significant* alteration of or addition to any existing building or structure or the change in use of any land, building or structure within any area subject to the provisions of these regulations shall be regulated or prohibited.

(Emphasis added.)

[¶ 16] For the foregoing reasons, we affirm.

---

**3.** It is certainly advisable to consult the proper authority prior to engaging in any activity that

might fall within the purview of a zoning ordinance.